S10A1387. GEAR v. THE STATE.
(705 SE2d 632)

HUNSTEIN, Chief Justice.

Appellant Richard Harold Gear was convicted of murder, aggravated assault and firearm possession in connection with the shooting death of Bryan Mough. Finding no error in the denial of Gear's motion for new trial,[1] we affirm.

1. The evidence authorized the jury to find that around 6:15 in the evening on February 25, 2008, Gear's daughters Chelsea and Samantha, then aged 20 and 18, respectively, were heading home after shopping in Athens. Chelsea exited the store parking lot by turning left at a light onto the Atlanta Highway. Behind her on a

---

[1] The crimes occurred on February 25, 2008. Gear was indicted in Oconee County on May 23, 2008 and charged with malice murder, felony murder based on aggravated assault, aggravated assault and three counts of possession of a firearm during the commission of a crime. He was tried before a jury and on December 1, 2008 found guilty of all charges. In an order entered the same day, the trial court merged the aggravated assault conviction with the conviction for malice murder and sentenced Gear to life imprisonment; the felony murder conviction was vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). The trial court also imposed a consecutive five year sentence on the conviction for possession of a firearm during the commission of malice murder, with which the remaining two firearm possession convictions were merged. Gear's motion for new trial was filed on December 8, 2008, amended on January 15, 2009 and denied on March 24, 2010; his notice of appeal was timely filed. The appeal was docketed in this Court for the September 2010 term and orally argued on September 8, 2010.

motorcycle was 21-year-old victim Bryan Mough, who made the turn by driving between the vehicles in the two left turn lanes and pulling in front of Chelsea. Continuing down the road, Chelsea passed some slower-moving vehicles, which included the victim's motorcycle; the victim later passed Chelsea. At a stop light at the intersection of the Atlanta Highway and Burson Avenue in Bogart, Chelsea was in the right turn only lane and the victim was next to her in the lane going straight. When the victim looked toward Chelsea, she made an obscene gesture and proceeded to turn right. The victim followed. Samantha called home on her cell phone and told her mother that she and Chelsea were being followed; the girls' mother told Gear to get his gun.

At a four-way stop, the victim pulled up next to the driver's side of Chelsea's car in the lane for oncoming traffic. As Chelsea began to make a left turn, the victim also accelerated and the vehicles collided. After regaining control of the motorcycle, the victim got in front of the girls' car and drove for a distance before turning off. The girls continued on their way home, but later noticed that the victim was behind them again. As Chelsea pulled into the driveway, Gear was descending the front steps of the house with a .40 caliber handgun. Gear walked down the driveway toward the road and fired two warning shots when the victim drove past the house. The victim turned the motorcycle around and as he drove down the road past the house again, Gear fired a third time. This shot struck the victim on the right side of the back, traveling downward from right to left and back to front, resulting in his death. Gear testified that he fired the third shot because the victim had swerved toward him.

Viewed in the light most favorable to the verdict, we conclude that the evidence was sufficient for a rational trier of fact to find Gear guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Gear contends that the trial court erred by denying his motion for a change of venue due to pretrial publicity.

> "The trial court has the discretion to grant a change of venue and its discretion will not be disturbed absent an abuse of that discretion. In a motion for a change of venue, the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. . . ." [Cits.]

*Edmond v. State*, 283 Ga. 507, 508 (2) (661 SE2d 520) (2008). Compare *Jones v. State*, 261 Ga. 665 (2) (409 SE2d 642) (1991)

(setting forth standard for case where State has sought death penalty). As for the first showing, "[e]ven in cases of widespread pretrial publicity, situations where such publicity has rendered a trial setting inherently prejudicial are extremely rare." (Footnote omitted.) *Miller v. State*, 275 Ga. 730, 735 (4) (571 SE2d 788) (2002). The record must establish that the publicity contained information that was unduly extensive, factually incorrect, inflammatory or reflective of an atmosphere of hostility. Id.; *Happoldt v. State*, 267 Ga. 126 (2) (475 SE2d 627) (1996). Gear has made no such showing.[2]

As to actual prejudice, "the question is not the number of jurors who had heard about the case; rather, the question is whether those jurors who had heard about the case could lay aside their opinions and render a verdict based on the evidence. [Cits.]" *Chancey v. State*, 256 Ga. 415, 432 (5) (C) (349 SE2d 717) (1986). Of the 140 persons who appeared for jury duty here, a total of 24, or 17 percent, were excused for cause because their knowledge of the case made it impossible for them to render a verdict based solely on the evidence.[3] See *Jenkins v. State*, 268 Ga. 468 (2) (491 SE2d 54) (1997) (procedure for calculating percentage of jurors excused for cause resulting from pretrial publicity is to compare number of jurors so excused to total number of jurors questioned). Since this excusal percentage is not indicative of such prejudice as would mandate a change in venue, the trial court did not abuse its discretion by denying Gear's motion. See *Chancey*, supra (excusal of 40 percent of venire for cause due to prejudice against defendants did not demand finding that jury selection process showed actual prejudice to degree rendering trial fundamentally unfair).

3. Gear argues that the trial court erred by denying his motion for new trial on the ground that there had been unauthorized communication between the jury and a bailiff whose employment was terminated during the course of the trial.[4]

---

[2] Although Gear argues that several members of the venire were excused because they had formed an opinion as to his guilt based on incorrect statements in the media that the victim was shot in the back, the evidence at trial clearly established that the entrance wound was on the side of the victim's back, six and one half inches to the right of the spine.

[3] At the beginning of voir dire, the trial court asked those who had formed an opinion as to Gear's guilt or innocence to stand; three persons stood and, after further questioning, two were excused. Following a determination that 84 members of the venire had heard about the case, the trial court questioned 20 people who stated that they had a fixed opinion as to Gear's guilt or innocence and excused all 20. During individual voir dire, the trial court excused two additional persons for reasons related to pretrial publicity, one for having formed a fixed opinion and the other for a professed inability to distinguish between what she already knew about the case and the evidence that would be presented at trial.

[4] After Gear's trial had ended, the judge learned that one of the bailiffs had been fired and he informed both defense counsel and the State. Testimony at an evidentiary hearing on this issue established that the bailiff had been hired on a temporary basis and that, after

Bailiffs are

> officers of the court designated as unbiased administrative attendants, whose sworn duty is to take custody of the jury and to "make no communication with them . . . nor permit anyone to communicate with them, except by leave of the court." [Cits.]

*Turpin v. Todd*, 271 Ga. 386, 389 (519 SE2d 678) (1999). At an evidentiary hearing on this issue, testimony was elicited regarding the bailiff's actions during Gear's trial and the circumstances surrounding his termination. Although certain co-workers were concerned about the bailiff's talkativeness and recalled incidents in which he had stayed in the jury room longer than necessary, no evidence was adduced of any communication other than interactions appropriate for one charged with attending to administrative matters in the conduct of a trial or the mere exchange of pleasantries.

"[W]here a[n improper] communication from the bailiff to the jury is shown, the burden is on the state to rebut by proof the presumption of harm." *Battle v. State*, 234 Ga. 637, 639 (217 SE2d 255) (1975). Because no such showing was made, no presumption of harm arose and no rebuttal was required. Thus, the trial court did not err by denying Gear's motion for new trial on this basis.

4. Gear cites as error the trial court's refusal to give his requested jury instructions on aggravated assault[5] and use of a motorcycle as a deadly or offensive weapon.[6] At the charge conference, defense counsel clarified that these instructions were intended to address Gear's contentions that the victim swerved toward Gear

---

complaints from other bailiffs regarding his performance, he was advised that his services were no longer needed.

[5] Gear's request to charge number 31 was as follows:
Ladies and gentlemen, defendant Richard Gear contends that the deceased, Mough, committed the offense of aggravated assault upon his person when Mough drove his motorcycle at defendant Gear in an offensive manner. To that end, I charge you that a person commits the offense of aggravated assault when that person assaults another person (with any object, device, or instrument that, when used offensively against a person, is likely to or actually does result in serious bodily injury).
To constitute such an assault, actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the deceased attempted to cause a violent injury to Richard Gear or intentionally committed an act that placed Gear in reasonable fear of immediately receiving a violent injury.

[6] Gear's request to charge number 32, based on *Turner v. State*, 281 Ga. 487 (1) (b) (640 SE2d 25) (2007), was as follows:
Although a motorcycle is not per se a deadly or offensive weapon, it may become one depending on the manner and means by which the vehicle is used. The question of whether a motorcycle has been used in such a manner is for you, the jury, to determine.

as he drove past the house the second time and that the third shot occurred when Gear was about to be struck by the motorcycle. In other words, Gear claimed that he shot the victim in an effort to prevent a forcible felony, i.e., the victim's aggravated assault upon Gear using the motorcycle as a weapon.

The trial court charged the jury extensively on the defense of justification, using pattern instructions on the concepts of use of force in defense of self or others,[7] forcible felony,[8] reasonable beliefs, no duty to retreat, use of force in defense of habitation, threats and menaces causing reasonable belief of danger, excessive force and revenge for prior wrong.[9] Because these charges were more than sufficient to enable the jury to intelligently consider Gear's defense, see generally *Roper v. State*, 281 Ga. 878 (2) (644 SE2d 120) (2007), the trial court did not err by declining to give the requested charges at issue.

5. Finally, Gear claims that the errors enumerated in Divisions 2 through 4 above combined to impinge on his fundamental right to trial by a fair and impartial jury. With regard to asserted errors by the trial court, however, a cumulative error rule is not applied. *McIlwain v. State*, 287 Ga. 115 (4) (694 SE2d 657) (2010). Compare *Schofield v. Holsey*, 281 Ga. 809, 812, n. 1 (642 SE2d 56) (2007) (combined effect of trial counsel's errors should be considered). Accordingly, this enumeration raises no issue for appellate review.

---

[7] In accordance with Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.), § 3.10.10, the jury was instructed that
[a] person is justified in threatening or using force against another person when, and to the extent that, he reasonably believes that such threat or force is necessary to defend himself or a third person against the other's imminent use of unlawful force. A person is justified in using force that is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person, or to prevent the commission of a forcible felony.

[8] The jury was instructed that "[a] forcible felony means any felony that involves the use or threat of physical force or violence against a person. Aggravated assault is a forcible felony." See Suggested Pattern Jury Instructions, supra at § 3.10.11. When charging the jury on the counts in the indictment against Gear, the trial court defined aggravated assault as an assault "with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." See Suggested Pattern Jury Instructions, supra at § 2.20.21.

[9] In accordance with Suggested Pattern Jury Instructions, supra at § 3.16.30, the jury was instructed that
[i]f you find from the evidence in this case that the defendant used force against the alleged victim named in this indictment in order to prevent an impending wrong that the defendant reasonably believed was about to be committed by such other person and that the defendant reasonably believed that such force was necessary in order to prevent such impending wrong, death, or great bodily injury to the defendant or to a third person, or to prevent the commission of a forcible felony, then that use of force would be justified, and it would be your duty to acquit the defendant.

See *McIlwain,* supra.
    *Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 7, 2011.

*Cook, Noell, Tolley & Bates, Edward D. Tolley, Ronald E. Houser,* for appellant.
    *Kenneth W. Mauldin, District Attorney, James V. Chafin, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General,* for appellee.