297 Ga. 352
FINAL COPY

S15A0600, S15A0601.  POWELL v. THE STATE (two cases).

BENHAM, Justice.

Appellants William and Sharmilla Powell are husband and wife.  They appeal their various convictions stemming from the death of Jesse Evans and the armed robbery of Geno Evans and Antonio Cunningham.[1]  The evidence viewed in a light most favorable to the verdicts showed that William sold drugs and that

---

[1]The crimes occurred on November 13, 2007.  On March 17, 2008, a Wayne County grand jury indicted both appellants on charges of the felony murder of Jesse Evans, the felony murder of Donovan Scott, the armed robbery of Geno Evans, and the armed robbery of Antonio Cunningham. Appellant William Powell was additionally charged with the aggravated assault of Geno Evans and Antonio Cunningham.  Appellant Sharmilla Powell was additionally charged with the aggravated assault of Jesse Evans.  The indictment was subsequently redacted to eliminate the charge of the felony murder of Donovan Scott.  Appellants were tried jointly before a jury from March 2, 2009, to March 5, 2009.  On a motion for directed verdict, the charge against Sharmilla for the aggravated assault of Jesse Evans was dismissed.  The jury found appellants guilty as to the remaining counts in the indictment as redacted.  The trial court sentenced each appellant to life in prison for felony murder and to a consecutive term of life in prison for armed robbery.  The remaining charges merged for sentencing purposes.  Appellants jointly moved, pro se, for a new trial on March 19, 2009.  With the assistance of counsel, William subsequently filed motions for new trial and amended motions for new trial on March 31, 2009, May 23, 2013, and  May 27, 2013.  Likewise with the assistance of counsel, Sharmilla filed motions for new trial and amended motions for new trial on April 6, 2009, March 7, 2011, October 4, 2011, and on September 12, 2012.  On May 28, 2013, the trial court held a hearing on appellants' motions for new trial, as amended, and denied their motions on February 18, 2014.  Appellants subsequently moved to file out-of-time appeals and the trial court granted their motions on June 2, 2014.  William filed his notice of appeal on June 4, 2014, and Sharmilla filed her notice of appeal on June 5, 2014.  Appellants amended their notices of appeal on October 6, 2014.  The appeals were docketed to the January 2015 term of this Court for a decision to be made on the briefs.

Geno Evans was believed to be a drug dealer.[2]  William and Sharmilla decided to rob Geno.  On the day in question, William and Sharmilla drove a rented black Chrysler Pacifica to Geno's house.  William entered the house and pointed a chrome colored handgun at Geno and Cunningham who had been inside watching television.  Wearing a Halloween mask and armed with an assault rifle, Donovan Scott, who was William's uncle, entered the home shortly after William.  William and Scott ordered Geno and Cunningham to the ground and demanded money.  Not satisfied with the amount of money they obtained from the pockets of Geno and Cunningham, the men had Geno make a phone call to have someone bring more money.  Geno first tried to call police, but Scott knocked the phone out of Geno's hand.  Next, Geno called his father Jesse Evans who lived nearby.  Jesse, discerning from the phone call that something was wrong, walked over to Geno's house armed with a shotgun.  When Jesse arrived outside Geno's door, William looked through the window.  William and Scott then exchanged guns, and William used the assault rifle to shoot Jesse

[2]While investigating the crime, police found pounds of marijuana in Geno's home and vehicle, bags of cocaine in his home and vehicle, and approximately $18,000 in cash in his vehicle.  At trial, however, Geno denied that any of these items were his.  Also at the time of trial, Geno had not been charged with any crimes related to the drugs and cash found in his home and vehicle.

2

through the door. During the melee, both Geno and Cunningham were shot and wounded, but Geno was able to make it outside the house, and he ran over to a neighbor's house to call police. While Geno was outside, Sharmilla emerged from the van and shot at him twice, but missed. William and Sharmilla eventually fled in the Chrysler Pacifica. When the police arrived, they found the bodies of Jesse and Scott on the porch of Geno Evans' house and found a wounded Cunningham inside the house. Police later apprehended appellants in Washington, D.C.

At trial, Sharmilla testified that she was never at Geno's house on the night in question and, instead, was at home with her children when the shooting occurred. She said William sometimes sold drugs and that, on the night in question, he did leave the house and go out, but noted William was not driving the Pacifica. She also testified that she had purchased the guns that were used in the shooting, but surmised that Scott had taken the guns from her home. Later on the same night of the shooting, Sharmilla stated she, William, and the

children left to go to Myrtle Beach, South Carolina, for the couple's anniversary.[3]

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellants guilty beyond a reasonable doubt of the crimes for which they were convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(a) Appellant William Powell alleges that the evidence was insufficient to support his conviction for felony murder and aggravated assault of Jesse Evans because he contends there was no proof that any bullet he fired wounded the victim and because he asserts that the ballistic examiner's testimony was "totally incompetent" concerning the identity of the caliber of rounds fired. These contentions lack merit. Two eyewitnesses stated that appellant shot through the door with an assault rifle when Jesse Evans arrived on the porch of Geno's house. Eyewitnesses also identified Scott as a shooter during the incident. The physical evidence showed that gunshots were fired through the entrance door from the inside to the outside of the house. The evidence was

---

[3]Along the way, Sharmilla testified that the family stayed overnight at a hotel in Darien, Georgia, when their baby became sick in the car.

4

sufficient to show that appellant either committed the crime directly or was a party to the crime of the felony murder and aggravated assault of Jesse Evans. See Grissom v. State, 296 Ga. 406 (1) (768 SE2d 494) (2015).

(b) Appellant William Powell alleges the evidence was insufficient to convict him of armed robbery because the evidence was conflicting and certain witness testimony was impeached. Appellate courts, however, do not re-weigh evidence or determine the credibility of witnesses on appeal, but rather appellate courts defer to the jury's findings. Dixon v. State, 294 Ga. 40 (3) (751 SE2d 69) (2013). The jury was authorized to resolve any conflicts in the evidence against appellants. Selvidge v. State, 252 Ga. 243, 245 (313 SE2d 84) (1984).

2. Both appellants argue that the trial court erred when it denied the defense motions for a change of venue. In support of this argument, appellants contend the jury that tried their case was not fair and impartial because many of the jury pool members were exposed to pretrial publicity about the case and because many of the jurors knew the victim Jesse Evans. This Court has held:

> The trial court has the discretion to grant a change of venue and its discretion will not be disturbed absent an abuse of that discretion. In a motion for a change of venue [when the death penalty is not sought], the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection

5

process showed actual prejudice to a degree that rendered a fair trial impossible,  As for the first showing, even in cases of widespread pretrial publicity, situations where such publicity has rendered a trial setting inherently prejudicial are extremely rare.  The record must establish that the publicity contained information that was unduly extensive, factually incorrect, inflammatory or reflective of an atmosphere of hostility.

(Citations and punctuation omitted.)  Walden v. State, 289 Ga. 845 (2) (717 SE2d 159) (2011).  It is not the number of jurors who have had pretrial exposure to publicity that is key; but the question is whether those jurors who have heard about the case can put aside their opinions and render a verdict based on the evidence presented at trial.  See Chancey v. State, 256 Ga. 415 (5) (C) (349 SE2d 717) (1986).

The transcript of the voir dire process shows that approximately 82 jurors[4] were considered for service at appellants' trial.  Approximately 28 jurors, or 34%, were dismissed for cause.[5]   All of the jurors who were eventually impaneled, except the two alternates, had some type of pretrial media exposure

---

[4]The record on appeal does not include any certified list from the clerk's office showing the potential jurors who were summoned and appeared for voir dire in appellants' trial.  Nor is there any record of what, if any, peremptory strikes were used by the parties.

[5]Four other jurors were dismissed for other reasons not at issue in this appeal.

to the case.[6] The two alternates stated they knew nothing about the case. One of the impaneled jurors worked with the victim Jesse Evans. The husband of another impaneled juror also worked with the victim. All the jurors who served on the jury testified that they could be fair and impartial and stated that they would base their decision only on the evidence that was presented at trial.

In this case, neither prong justifying a change in venue has been met. Although a third of the potential jurors were dismissed for cause, appellants have failed to show actual prejudice or that those jurors who remained could not be fair and impartial in spite of publicity associated with the case. See Chancey v. State, supra, 256 Ga. at 431-432 (no actual prejudice rendering a fair trial impossible was shown where 42% of the venire had been excused for cause and where 72% of prospective jurors had heard or read about the case). In addition, the record showed the trial court was meticulous in excusing any prospective juror who expressed any degree of fixed bias. Likewise, appellants failed to proffer any evidence that the pretrial publicity was so pervasive as to render the trial setting inherently prejudicial. Under these circumstances, we cannot say

---

[6]The type of pretrial publicity most potential jurors indicated they had encountered consisted of articles in the local newspaper, radio broadcasts, and/or gossip.

the trial court abused its discretion when it denied appellants' requests for a change of venue. Id. at 432; <u>Gear v. State</u>, 288 Ga. 500 (2) (705 SE2d 632) (2011).

3. Both appellants contend their jury was not constitutionally fair and impartial because the impaneled jurors were all Caucasian, whereas appellants are African-American. Inasmuch as no <u>Batson</u>[7] challenge or other objection was made below regarding the racial composition of the jury, the issue has been waived for appellate review. See <u>Lyons v. State</u>, 271 Ga. 639 (5) (522 SE2d 225) (1999) (<u>Batson</u> issue was waived on appeal when it was not specifically raised below).[8] To the extent appellants allege that they were constitutionally denied a fair and impartial jury because of the exposure of potential jurors to pretrial publicity, those claims lack merit for the reasons set forth in Division 2, supra.

4. Appellant William Powell contends the prosecutor engaged in misconduct when a colloquy occurred between the prosecutor and Sharmilla,

[7]<u>Batson v. Kentucky</u>, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986).

[8]We note further that there is nothing in the record on appeal which shows the racial or ethnic make-up of the approximately 82 potential jurors who were considered for service.

during which he asked whether her religion precluded her from taking oaths and telling the truth. Since William never objected to this colloquy at trial, the matter is waived for appellate review. See Johnson v. State, 293 Ga. 641 (4) (748 SE2d 896) (2013).

5. Appellant Sharmilla Powell contends her trial counsel rendered constitutionally ineffective assistance on several grounds. In order to prevail on a claim of ineffective assistance of counsel, Sharmilla

> must show counsel's performance was deficient and that the deficient performance prejudiced [her] to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If a defendant fails to meet her burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) Appellant alleges that counsel failed to move for a change of venue. This allegation is not borne out by the record.

(b)  Appellant alleges trial counsel was deficient for failing to file a motion to sever.  At the motion for new trial hearing, counsel testified that the defense made a strategic decision not to sever the defendants and, in any case, the couple wanted to be tried together.  "The failure to file a motion to sever does not require a finding of ineffective assistance since the decision whether to seek severance is a matter of trial tactics or strategy [cit.], and a decision amounting to reasonable trial strategy does not constitute deficient performance."  Harris v. State, 279 Ga. 522 (6) (615 SE2d 532) (2005).

(c) The indictment the jurors received for their deliberations was redacted to exclude the charge of the felony murder of Donovan Scott, which charge was dismissed pretrial for both appellants, and the charge of aggravated assault of Geno Evans, which charge was dismissed against Sharmilla via a motion for directed verdict.  Appellant alleges her counsel was deficient when he failed to object to the redacted indictment going back with the jury.  At the motion for new trial hearing, Sharmilla's trial counsel explained he did not want the jurors to be privy to the dismissed charges for fear that the jurors would think Sharmilla was "getting away" with something.  On appeal, Sharmilla counters that trial counsel should have allowed the un-redacted indictment to go out with

the jurors, as well as make an argument to the jury that, because these two charges were dismissed, the jury should not convict her of the remaining charges. Appellant's argument is unavailing. There is nothing unreasonable about a lawyer's wanting jurors to have an indictment that reflects the current charges pending against his client. Counsel's performance was not deficient in this regard.

(d) Appellant alleges her counsel was deficient by failing to render a proper defense inasmuch as he did not proffer certain items of evidence at trial. Specifically, appellant complains that counsel failed to call witnesses other than herself, failed to find and/or place hotel receipts into evidence, and failed to introduce appellants' marriage certificate into evidence. At the motion for new trial hearing, counsel stated he decided not to introduce appellants' marriage certificate because it revealed Sharmilla's religion; and instead, Sharmilla testified as to the date of her marriage and testified that she and William were traveling out of town for their anniversary, and were not fleeing a crime. As to hotel receipts, Sharmilla's own testimony placed the couple in town at the

11

approximate time the shooting occurred[9] and, therefore, any hotel receipts would have been irrelevant as to appellants' main defense that they were not at the crime scene.[10] At the motion for new trial hearing, appellant failed to proffer any witnesses or documentary evidence, including any hotel receipts, that she contends counsel was deficient in failing to proffer at trial. In the absence of offering such evidence at the motion for new trial hearing, appellant cannot show prejudice. See Miller v. State, 295 Ga. 769 (2) (a) (i) (764 SE2d 135) (2014); Barge v. State, 294 Ga. 567 (2) (755 SE2d 166) (2014). Appellant's claim of ineffective assistance of counsel necessarily fails.

Judgments affirmed. All the Justices concur.

---

[9]At the time of the shootings, appellant claimed to be at home with her children, and said William had gone out, but that he was driving a vehicle other than the Pacifica that was spotted at the crime scene.

[10]The same is true for any fibers from appellants' vehicle which Sharmilla opined would have corroborated her story that they stopped at a hotel because their baby was sick.

Decided June 15, 2015.

Murder. Wayne Superior Court. Before Judge Scarlet.

Earle J. Duncan III, for appellant (case no. S15A0600).

Samantha F. Jacobs, for appellant (case no. S15A0601).

Jacquelyn L. Johnson, District Attorney, Andrew J. Ekonomou, John B. Johnson III, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General, for appellee.