303 Ga. 624
FINAL COPY

S18A0276.  TAYLOR v. THE STATE.

PETERSON, Justice.

Zachary B. Taylor appeals his conviction for malice murder based on the 2004 death of Lamar Railey 16 days after Taylor struck him with his car.[1] Taylor argues that his malice murder conviction is not supported by sufficient evidence because the State did not prove intent and causation. He also argues that the trial court erred when it denied Taylor's motion to change venue and

---

[1] The hit and run occurred on February 13, 2004. On May 9, 2005, a Harris County grand jury indicted Taylor on charges of malice murder, felony murder predicated on aggravated assault, aggravated assault, and aggravated battery. At a trial held November 29 through December 1, 2005, a jury found Taylor guilty on all counts except felony murder (which was placed on the dead docket). The trial court merged the aggravated assault conviction and sentenced Taylor on malice murder and aggravated battery. This Court affirmed Taylor's convictions on direct appeal. See Taylor v. State, 282 Ga. 44 (644 SE2d 850) (2007). On April 16, 2013, a Macon Judicial Circuit judge granted Taylor's request for habeas relief. Taylor was retried February 17-24, 2015; the second jury found Taylor guilty of murder, felony murder, aggravated assault, and aggravated battery. The trial court sentenced Taylor to life in prison on the murder count, noted that the felony murder conviction was vacated, and merged the guilty verdicts on aggravated assault and aggravated battery. The trial court denied Taylor's motion for new trial, as amended, in an order filed on March 7, 2016. Taylor filed a timely notice of appeal, and the case was docketed to this Court's term beginning in December 2017. An out-of-time motion for oral argument filed by Taylor was denied.

when it denied Taylor's challenge under Batson v. Kentucky, 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986). We find that the evidence of intent and causation was sufficient to convict Taylor of malice murder. We also conclude that the trial court did not abuse its discretion in denying Taylor's motion for a change of venue or commit reversible error in denying Taylor's Batson challenge. We affirm.

1. Taylor was first tried in 2005, when a jury found him guilty of malice murder and other crimes. This Court affirmed Taylor's murder conviction on direct appeal. See Taylor v. State, 282 Ga. 44 (644 SE2d 850) (2007). In April 2013, Taylor's petition for habeas corpus relief was granted on the basis that trial counsel had been ineffective in handling issues related to Taylor's mental health. Taylor was retried in February 2015.

Viewed in the light most favorable to the verdict, the evidence at Taylor's retrial showed as follows. Taylor had a history of animosity toward Railey, who owned a body shop and towed Taylor's car at the request of law enforcement in 2002. Claiming that the towing was unlawful, Taylor unsuccessfully sued Railey in federal court, unsuccessfully sought arrest warrants against Railey, and confronted Railey outside his shop.

2

On the evening of February 13, 2004, Railey and one of his body shop employees observed a mid-sized sedan parked across the street from the shop with its engine running. About the same time, Harris County 911 received a call from a man who identified himself as Zachary B. Taylor, asking that officers be dispatched to Railey's body shop because a felony was in progress. The caller said he would be on the scene in a green Chrysler but declined to explain exactly what was happening. A few minutes later, 911 began receiving calls from multiple individuals reporting that they had seen a car strike a pedestrian at a gas station around the corner from the body shop. Witnesses testified that they saw a car hit Railey, who was thrown over the car before landing on the pavement; the car then drove off. One witness, Keith Hammond, reported to 911 that the car was a dark green Chrysler, with a Harris County tag and a license plate bearing the letters DAWGLB.

A deputy initiated a traffic stop of a car matching the description given by Hammond. Taylor was driving the car. In Taylor's car, law enforcement found an envelope with Railey's name on it, containing documents regarding Taylor's attempts to obtain an arrest warrant against Railey. Meanwhile, Railey was taken to a hospital and diagnosed with a fractured ankle. He was discharged from the

3

hospital within a few days.

On February 29, 2004, emergency medical services were summoned to Railey's home. He was sitting in a wheelchair with a cast on his right leg. His blood oxygen saturation and blood pressure were low and he reported feeling as though he were about to pass out. Railey went into cardiac arrest on the way to the hospital and was pronounced dead soon after arriving.

Taylor did not concede at trial that he had struck Railey with his car, but a focus of the trial was whether Railey's death was actually caused by the hit and run. The GBI medical examiner who performed Railey's autopsy concluded that Railey died as a result of a pulmonary thromboembolism that was caused by deep vein thrombosis ("DVT") in his right leg, which in turn was caused by trauma to the leg when he was struck by the car. A defense expert testified that Railey could have been suffering from DVT prior to the incident and that he could not say to a reasonable degree of certainty that the thrombus below his right knee traveled to and embolized in his lung.

Taylor challenges on appeal the sufficiency of the evidence to support his conviction, arguing in particular that the State did not prove two essential elements of malice murder: (1) that he formed the intent to kill Railey; and (2)

4

that the hit and run proximately caused Railey's death. We disagree on both points.

When evaluating the sufficiency of evidence, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted). "[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) (citation and punctuation omitted).

"A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a). Considering first the issue of intent, "[w]hether a killing is intentional and malicious is for the jury to determine from

5

all the facts and circumstances." Oliver v. State, 276 Ga. 665, 666 (1) (581 SE2d 538) (2003).

> [T]he crime of malice murder is committed when the evidence shows either an express or, in the alternative, an implied intent to commit an unlawful homicide. The meaning of malice murder is consistent with the general rule that crimes which are defined so as to require that the defendant intentionally cause a forbidden bad result are usually interpreted to cover one who knows that his conduct is substantially certain to cause the result, whether or not he desires the result to occur.

Sheffield v. State, 281 Ga. 33, 35 (2) (635 SE2d 776) (2006) (citation and punctuation omitted).

Here, the State presented evidence from which rational jurors could conclude that Taylor intended to hit Railey with his car. In particular, there was evidence that Taylor bore a grudge against Railey for towing his car, leading Taylor to go so far as to sue Railey, seek arrest warrants against him, and confront him at his shop. See Peterson v. State, 274 Ga. 165, 170-171 (4) (549 SE2d 387) (2001) (evidence of prior quarrel between defendant and victim may be admissible to show defendant's intent). There was evidence from which the jury could conclude that Taylor was lying in wait for Railey outside the shop minutes before the hit and run occurred. Witnesses testified that the impact was

6

strong enough to loft Railey several feet into the air, but Taylor drove off without stopping to render aid. This evidence authorized the jury to conclude that Taylor intended to hit Railey. The jury thus also was authorized to conclude that Taylor formed at least an implied intent to kill Railey, as the law assumes that a person intends a result that his action "is substantially certain to cause," and intentionally hitting a pedestrian with a vehicle in a manner that lofts that person several feet into the air is substantially certain to kill the pedestrian.

Taylor also argues that the State did not prove the requisite causation, arguing that the record showed there were many different factors in the victim's death apart from the hit and run. Proximate cause is the causation standard for murder cases. See State v. Jackson, 287 Ga. 646, 649 (2) (697 SE2d 757) (2010); OCGA § 16-5-1 (a). We have held that an unlawful injury is the proximate cause of death when:

> (1) the injury itself constituted the sole proximate cause of the death; or . . . (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or . . . (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause.

Brown v. State, 297 Ga. 685, 688 (2) (777 SE2d 466) (2015) (citation omitted).

Proximate cause is generally a question for the jury. Jackson, 287 Ga. at 652 (2).

7

Here, the medical examiner testified that Railey died from an embolism caused by his hit-and-run injuries. This is enough to show that Taylor's actions proximately caused the victim's death. See Singley v. State, 198 Ga. 212, 214-215 (1) (31 SE2d 349) (1944) (sufficient evidence of causation where physician testified that, even if victim died of pneumonia, internal bleeding from beating left him susceptible to illness). Although Taylor's cross-examination of the medical examiner suggested another theory for the source of the embolism, the jury was not required to accept that alternative theory. And although Taylor points to testimony by his expert, the jury was not required to credit that testimony. Moreover, even the defense expert conceded that the trauma from the hit and run contributed to Railey's death, consistent with a finding of proximate cause. The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Taylor was guilty of murder.[2]

2. Taylor also argues that the trial court abused its discretion in denying

---

[2] Taylor also argues that reversal is warranted for the independent reason that the trial court's jury instructions on causation were confusing. But he does not include this in his stated enumerations of error, and we do not consider it. See Felix v. State, 271 Ga. 534, 539 n. 6 (523 SE2d 1) (1999) ("[A]n appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors.") (citations omitted).

his motion for a change of venue. We disagree.

"In a motion for a change of venue when the death penalty is not sought, the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible." Powell v. State, 297 Ga. 352, 354 (2) (773 SE2d 762) (2015) (citation and punctuation omitted). On appeal, Taylor argues that he made the first showing, contending that prejudice should have been presumed based on what he characterizes as extensive publicity about the case in a small community. "[E]ven in cases of widespread pretrial publicity, situations where such publicity has rendered a trial setting inherently prejudicial are extremely rare." Id. "The record must establish that the publicity contained information that was unduly extensive, factually incorrect, inflammatory or reflective of an atmosphere of hostility." Id. The trial court's decision on a motion to change venue is reviewed only for an abuse of discretion. Id.

The trial court did not abuse its discretion here. Although Taylor correctly notes that the Supreme Court of the United States has occasionally found that publicity about a case created a presumption of prejudice that could not be rebutted by jurors' assurances of impartiality during voir dire, the record here

9

does not come close to showing the sort of extreme publicity that has supported such a presumption. Compare Sheppard v. Maxwell, 384 U. S. 333, 352-355 (86 SCt 1507, 16 LE2d 600) (1966) (media "took over practically the entire courtroom" at trial, and coverage included publication of photos of prospective jurors); Estes v. Texas, 381 U. S. 532, 538 (85 SCt 1628, 14 LE2d 543) (1965) (media "bombard[ed] . . . the community with the sights and sounds of" a pretrial hearing; four of the jurors selected saw all or part of those broadcasts); Rideau v. Louisiana, 373 U. S. 723, 726-727 (83 SCt 1417, 10 LE2d 663) (1963) (local television station in small town broadcast defendant's confession to police on three occasions before trial); with Skilling v. United States, 561 U. S. 358, 379-385 (130 SCt 2896, 177 LE2d 619) (2010) (distinguishing Sheppard, Estes, and Rideau as "extreme" cases in which the trial atmosphere was "utterly corrupted by press coverage"); Patton v. Yount, 467 U. S. 1025, 1029-1035 (104 SCt 2885, 81 LE2d 847) (1984) (any presumption of prejudice at time of first trial dissipated by time of retrial four years later, even though two local newspapers each published "an average of less than one article per month" — many "extremely brief announcements" of court dates — in the year and a half between reversal of the first conviction and start of voir dire at the second

10

trial and most prospective jurors said they had an opinion about the case). The Supreme Court has made clear that news accounts alone do not presumptively deprive the defendant of due process and that "juror impartiality . . . does not require ignorance." Skilling, 561 U. S. at 380-381.

Taylor put into the record only three news articles, two apparently from 2004 and one dated October 12, 2013 (after Taylor was granted habeas relief).[3] Three articles — two more than ten years before retrial — hardly amount to pervasive pretrial publicity. See Reddings v. State, 292 Ga. 364, 367 (3) (738 SE2d 49) (2013) (no abuse of discretion in denying motion for change of venue where the complained-of pretrial publicity consisted of two local newspaper articles published more than a year before trial and only two prospective jurors indicated they had any familiarity with the case); see also Skilling, 561 U. S. at 383 (distinguishing "cases in which trial swiftly followed a widely reported crime"). Although the copies of the 2004 articles in the record are largely illegible, the articles in the record do not appear to contain any confession on the

---

[3] In a supplemental brief, Taylor states that "[i]n addition to the articles present in the record, a simple online search of Taylor's trial reveals 186,000 hits, including several published books." But Taylor did not present any such evidence to the trial court, and we will not consider it here.

11

part of the defendant, something the Supreme Court has identified as particularly prejudicial. See Skilling, 561 U. S. at 382-383. The articles do not appear to evidence an atmosphere of hostility in the community. The 2013 article indicates that the victim's widow was dismayed that Taylor had been released from prison and might be retried, but that sort of negative reaction on the part of a victim's family is hardly remarkable, and the 2013 article does not show that the public shared the widow's views or was otherwise hostile toward the defendant. Taylor has not shown that the type and amount of press coverage of the case was of such an extreme sort that a presumption of prejudice arose.

Although Taylor points to remarks by several prospective jurors to the effect that they had heard about the case, such remarks do not transform that press coverage into the sort justifying a presumption of prejudice.[4] Moreover, Taylor failed to exhaust his peremptory challenges, and the general rule is that a trial court's denial of a motion for change of venue will not be reversed where the appellant failed to exhaust his strikes. See Brady v. State, 270 Ga. 574, 575

_____

[4] In a supplemental appellate brief, Taylor argues that the trial court erred in declining to excuse an entire panel based on the remark of one prospective juror who was excused for cause, but such a claim is not contained within his enumerations of error, and we do not consider it.

12

(3) (513 SE2d 199) (1999). We find no abuse of discretion in the denial of Taylor's motion.

3. Finally, Taylor argues that the trial court erred by denying his <u>Batson</u> challenge. The trial court did not commit reversible error in this regard.

Forty-seven jurors were qualified by the court and brought before the parties to exercise their peremptory strikes. Taylor brought a <u>Batson</u> challenge on the basis that the State had exercised seven of its nine peremptory strikes to eliminate African-American members of the venire. A <u>Batson</u> challenge involves three steps: "(1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent." <u>Coleman v. State</u>, 301 Ga. 720, 723 (4) (804 SE2d 24) (2017) (citation and punctuation omitted). Here, the prosecutor acknowledged "the percentages are probably a prima facie case." The trial court found that Taylor made a prima facie showing of purposeful discrimination, and the prosecutor proceeded to offer explanations for her strikes:

• She said she struck Juror No. 2 because he indicated that he had

13

heard about the case, knew Taylor and was friends with his family and thought that might impact his decision-making as a juror, had a sister who was a criminal defense attorney, and knew Juror No. 13.

• She said she struck Juror No. 13 because he indicated that he knew Juror No. 2 and Taylor, was a friend of Taylor's family, knew someone who had been falsely accused of a crime, had a brother who he thought was treated unfairly by the criminal justice system, and had a son in jail.

• She said she struck Juror No. 15 because she said her son had been falsely accused of a crime and because she was a union advocate; in her experience, the prosecutor said, those who represent unions are not prosecution-friendly.

• She said she struck Juror No. 18, a minister who had visited parishioners in jail, because ministers tend to forgive and do not want to decide whether someone is guilty.

• She said she struck Juror No. 35 because he said he thought his daughter had been wrongly accused and convicted on charges related to a robbery.

• She said she struck Juror No. 56 because he had unrealistic expectations of what must be offered at trial — stating that he would need to hear from the defense and that he has "to see it for myself" — and because he "made a face" at the prosecutor.

• She said she struck Juror No. 59 because she stated that she was dissatisfied with the criminal justice system, in particular because her son had been unfairly charged with a crime involving a road rage incident.

The trial court denied the challenge, saying the prosecutor had proffered race-

14

neutral reasons for each of her strikes and that the reasons offered were credible.[5]

Taylor argues that the State failed to provide valid, race-neutral explanations for each of the challenged strikes of African-American jurors. "At step two, the proponent of the strike need only articulate a facially race-neutral reason for the strike. Step two 'does not demand an explanation that is persuasive, or even plausible.'" Toomer v. State, 292 Ga. 49, 54 (2) (b) (734 SE2d 333) (2012) (quoting Purkett v. Elem, 514 U. S. 765, 768 (115 SCt 1769, 131 LE2d 834) (1995)). The trial court did not err in concluding that the prosecutor had offered satisfactory race-neutral reasons for striking the jurors. Each of the reasons offered by the prosecutor for her strikes — familiarity with the defendant, his family, or another juror; employment of the juror or a member of their family; union advocacy; criminal history of family members; expectations of what would be shown at trial; and juror demeanor during voir dire — is race-neutral on its face. Although Taylor argues that some of these

[5] Taylor notes in a supplemental appellate brief that the State struck an African-American juror during the process of selecting alternate jurors. Taylor did not challenge this strike before the trial court, however, and we do not consider any challenge to the strike now. See Powell, 297 Ga. at 355-356 (3) (issue waived where no Batson challenge or other objection regarding racial composition of jury was made below).

15

reasons — in particular employment as a minister or knowledge of someone with a criminal conviction — "reflect unacceptable stereotypical attitudes as to particular groups and cannot be considered race-neutral[,]"[6] we previously have held that these reasons are sufficient to satisfy the prosecutor's burden under step two. See Wilkins v. State, 291 Ga. 483, 485 (2) (731 SE2d 346) (2012) (criminal history of family members is sufficiently race-neutral reason to exercise peremptory strike); Trice v. State, 266 Ga. 102, 103 (2) (464 SE2d 205) (1995) (employment is race-neutral characteristic) (citing Higginbotham v. State, 207 Ga. App. 424, 426 (3) (428 SE2d 592) (1993) (employment as pastor is race-neutral factor)).

---

[6] Taylor also suggests that the prosecutor justified her strikes based on particular jurors' habits as "churchgoers," contending this also reflected an unacceptable stereotype. But the notion that the prosecutor offered this reason for any of her strikes is not supported by the record. After the prosecutor explained that she struck Juror No. 18 because he was a minister, defense counsel responded that if the prosecutor were striking him based on his religion, "the State's got a problem" because "the law is beginning to recognize some Batson challenges based on religion." The prosecutor replied simply, "It's a race neutral reason." Taylor cites Foster v. Chapman, __ U. S. __ (136 SCt 1737, 195 LE2d 1) (2016) to suggest that striking a juror based on their church membership is not race-neutral. But in that case the Court relied on a number of factors — including a note in the prosecution's file that suggested it wanted no juror from a "Black Church" — to conclude that a prospective juror's church membership was not the real reason the prosecution struck him but a mere pretext for racial discrimination. Id., 136 SCt at 1751-1754. There is no such evidence here to support a claim that the prosecutor's reliance on Juror No. 18's religious work was a mere pretext for racial discrimination, and Taylor has not raised a claim of religious discrimination.

Taylor relies on case law from the Court of Appeals to suggest that the State's reliance on prospective jurors' demeanor was improper, as impermissibly based on speculation and conjecture. See George v. State, 263 Ga. App. 541, 544-545 (2) (a) (588 SE2d 312) (2003) (finding "unpersuasive" prosecutor's explanation that he struck juror in part based on demeanor); Parker v. State, 219 Ga. App. 361, 364 (1) (464 SE2d 910) (1995) (explanation that prospective jurors were struck based on demeanor "not the kind of concrete, tangible, race-neutral, case-related and neutrally applied reasons sufficient to overcome [defendant's] prima facie case"). But we have disapproved the core analysis of those decisions and expressly disapproved Parker, noting that "both the United States Supreme Court and this Court have squarely held that a peremptory strike based upon a juror's demeanor during voir dire may be race-neutral at Batson step two." Toomer, 292 Ga. at 54 (2) (b); see also Littlejohn v. State, 320 Ga. App. 197, 202 (1) (c) n. 3 (739 SE2d 682) (2013) (noting Toomer's disapproval of standard employed in George).[7]

_____

[7] Taylor also argues in a supplemental brief that the State's explanation that it struck certain jurors because they expressed dissatisfaction with the criminal justice system or similar attitudes is not truly race-neutral because "such attitudes are culturally interwoven in the Black Community, a symptom of being a historically oppressed minority[.]" But regardless of the accuracy of Taylor's sweeping assertions, the Supreme Court of the United

17

Turning to the trial court's ultimate determination at step three, Taylor argues that the prosecutor's explanations were not credible because they in some instances misrepresented the testimony of African-American prospective jurors and because the prosecutor did not strike similarly-situated non-black jurors. At the third step of the Batson analysis, the trial court "makes credibility determinations, evaluates the persuasiveness of the strike opponent's prima facie showing and the explanations given by the strike proponent, and examines all other circumstances that bear upon the issue of racial animosity." Coleman, 301 Ga. at 723 (4) (citation and punctuation omitted). That a prosecutor's explanation for a peremptory strike is not supported by the record or would apply equally to a similarly-situated non-black juror may support a finding of discriminatory intent at Batson's third step. See Miller-El v. Dretke, 545 U. S. 231, 241-252 (125 SCt 2317, 162 LE2d 196) (2005). But "[a] trial court's finding as to whether the opponent of a strike has proven discriminatory intent

States has instructed us that a disproportionate impact does not transform a given criterion for jury selection into a per se violation of the Equal Protection Clause. Hernandez v. New York, 500 U. S. 352, 361 (111 SCt 1859, 114 LE2d 395) (1991) (plurality); id. at 372-375 (O'Connor, J., concurring in judgment). We thus have held that having a family member who the prospective juror believes was falsely accused is a facially race-neutral reason for being struck. See Willis v. State, 287 Ga. 703, 708-709 (5) (699 SE2d 1) (2010) (citing Hernandez).

18

is entitled to great deference and will not be disturbed unless clearly erroneous."

Woodall v. State, 294 Ga. 624, 627 (3) (754 SE2d 335) (2014); see also Snyder v. Louisiana, 552 U. S. 472, 477 (128 SCt 1203, 170 LE2d 175) (2008) ("The trial court has a pivotal role in evaluating Batson claims. Step three of the Batson inquiry involves an evaluation of the prosecutor's credibility, and the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge[.]" (citations and punctuation omitted)).

In a supplemental brief, Taylor argues that some of the prosecutor's explanations for her strikes of African-American prospective jurors mischaracterized those jurors' statements during voir dire. Taylor's arguments in this regard are themselves unsupported by the record or involved only minor discrepancies between the prosecutor's statements and those of the prospective jurors. In one instance, Taylor accurately points out the record contains no support for the prosecutor's explanation that she struck Juror No. 13 in part because he indicated that he knew Taylor and was a friend of Taylor's family. But, particularly given that the prosecutor also offered other, race-neutral reasons for striking Juror No. 13, we cannot conclude that this discrepancy is a basis for concluding that the trial court clearly erred in finding no discriminatory

19

intent.

Notwithstanding Taylor's attempts to draw comparisons between black jurors who were struck by the State and non-black jurors who were not, we cannot conclude that the trial court clearly erred in its determination that Taylor had failed to prove discriminatory intent.[8] Taylor's suggestion that the State failed to strike a non-black prospective juror who was similarly-situated to the African-American pastor struck by the State is not supported by the record, as the trial court excused the entire panel on which a non-black juror who was a minister and had visited a friend in jail appeared. Taylor asserts that there were non-black jurors who, like Juror No. 2, had heard about the case or had attorneys in their families,[9] but he does not attempt to show that any of those non-black

---

[8] We note that Taylor never drew the trial court's attention to most of the particular non-black venire members who he now contends were similarly-situated to the black venire members struck by the State. See Snyder, 552 U. S. at 483 (noting dangers of comparing jurors based on cold appellate record when alleged similarities were not raised at trial but proceeding to do so given that the particular shared characteristic — concern about serving on the jury due to conflicting obligations — was thoroughly explored by the trial court when the relevant jurors asked to be excused for cause); United States v. Houston, 456 F3d 1328, 1338-1339 (11th Cir. 2006) (pre-Snyder, refusing to find error in trial court's failure to draw comparisons between jurors that no party asked it to draw). We need not resolve the question of whether that failure precludes his argument now, because his argument fails on the merits in any event.

[9] Although Taylor does not cite to the record for this point, it appears that neither of the jurors to whom he refers actually had an attorney in their family; one stated that he was

jurors knew Taylor or his family, like Juror No. 2 did. And although Taylor argues that the State declined to strike several non-black jurors who, like Juror No. 56, expressed concerns about fairness to the defendant, he does not purport to show that any other juror expressed the same sort of need "to see it for myself" expressed by Juror No. 56.[10] Finally, although Taylor complains that the State did not strike non-black prospective jurors who had a family member with a criminal history, all four of the African-American venire members struck for that reason also stated that they believed that their family member had been wrongly accused, offering an additional race-neutral reason for the strikes. See Willis v. State, 287 Ga. 703, 708-709 (5) (699 SE2d 1) (2010). Of the allegedly similarly-situated non-black jurors to which Taylor points, none responded affirmatively to the question of whether they felt they knew someone who had been falsely or mistakenly accused. We cannot conclude that the trial court clearly erred in finding an absence of intentional discrimination.

Judgment affirmed. All the Justices concur, except Blackwell, J., who concurs in judgment only as to Division 1.

---

friends with a lawyer, and another stated that his wife "works for lawyers[.]"

[10] Of the three jurors Taylor claims are comparable to Juror No. 56, two were struck by the State and one was struck for cause over the State's objection.

21

Decided May 7, 2018.

Murder. Harris Superior Court. Before Judge Jordan.

Whitaker & Whitaker, Alfonza Whitaker; Bukh Law Firm, Leon Jacobson, for appellant.

Charles A. Spahos, District Attorney Pro Tempore, Lalaine A. Briones, Assistant District Attorney Pro Tempore; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General, for appellee.