**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 24, 2019**

# In the Court of Appeals of Georgia

A19A0950. THE STATE v. McCARGO.

McFADDEN, Chief Judge.

The state appeals from the trial court's grant of a new trial to Anthony McCargo, who had been convicted of the offenses of child molestation and enticing a child for indecent purposes. In his order, the trial court found that a bailiff had engaged in an improper communication with the jury during their deliberations and that the state had not rebutted the presumption of harm arising from that communication. Because there is evidence supporting this ruling, we affirm.

The record shows that McCargo moved for a new trial based, among other things, on an alleged improper communication between a bailiff and the jury during jury deliberations. At the hearing on his motion, McCargo presented evidence that the bailiff had informed the jury that there had been an earlier mistrial in the case, and the

state concedes on appeal that an improper communication occurred. See *Gear v. State*, 288 Ga. 500, 503 (3) (705 SE2d 632) (2011) (bailiff's duty "is to take custody of the jury and to make no communication with them nor permit anyone to communicate with them, except by leave of court") (citation and punctuation omitted). See also *Turpin v. Todd*, 268 Ga. 820, 823 (1) (493 SE2d 900) (1997) (bailiff's improper statements to jury may violate defendant's right to fair trial); *Edge v. State*, 345 Ga. App. 794, 796 (2) (815 SE2d 146) (2018) ("no outside influence shall be brought to bear on the minds of the jury") (citations and punctuation omitted).

Where an improper communication from the bailiff to the jury is shown in a criminal case, a presumption of harm arises and the state bears the burden of rebutting that presumption. *Gear*, 288 Ga. at 503 (3); *Jones v. State*, 258 Ga. 96, 96-97 (366 SE2d 144) (1988); *Battle v. State*, 234 Ga. 637, 639 (217 SE2d 255) (1975). The state made a proffer of evidence that 11 of the jurors in the case would testify that the bailiff's comments regarding the earlier mistrial did not affect their verdict. The trial court accepted this proffer but held that it did not rebut the presumption of harm in this case. Instead the trial court found, based on other evidence presented at the hearing, that "after hearing the improper communication, several jurors sought to

'make it right for the little girl' during the trial and deliberations." So the trial court granted McCargo a new trial.

Evidence at the hearing supported the trial court's finding, particularly a series of statements made by the twelfth juror in private messages on Facebook. In those statements, the juror referred to the bailiff's comments as possible "jury tampering" and indicated that the bailiff's comments affected the jury's deliberations, which in turn affected that juror's own verdict. Among other things, the juror stated in the private messages:

> For the record, I was the only holdout. *I caved*. Despite the icky. I have regretted not reporting something since, well, the moment it happened. . . . [I]n the end, the jury got stuff that was not in what you will read [in the trial transcript]. *A few sentences from the really old lady bailiff was all that it took to stir the pot. And in the end, those sentences are what found him guilty, NOT what is in the transcripts that you will read*. . . . [T]he statement she had said in the jury room would be one of the reasons that my group wanted to come to a verdict so swiftly. Despite me reminding them that the information they were discussing was 'unknown' and 'not a part of our trial,' it was evident that this did not matter to the hoard. *I was alone in objection — and admittedly, it haunts me to this day*. . . . She told us that this was the second time trying the case . . . . [P]revious one the jury couldn't agree. [M]istrial. I have no idea if that was tru[e] or false, but *from then on, it was about how we were going to make it right*.

(Emphasis supplied.)

The juror who made these statements in private messages also testified at the hearing on the motion for new trial. She admitted making those statements. She testified that the bailiff had either stated or implied to the jury that McCargo "had a mistrial the first time," that the jurors discussed the bailiff's statement during deliberations, and that in the context of those discussions some of the jurors stated that they were going to "[m]ake[ ] the verdict right." She testified that the issue "came up multiple times[.]" Although at the hearing the juror also testified that she might have exaggerated in the private messages the impact of the bailiff's comments, and she testified that the comments did not affect her verdict, the trial court was not required to credit those aspects of her testimony. See *Henley v. State*, 285 Ga. 500, 503-504 (2) (676 SE2d 884) (2009) (trial court has prerogative to disbelieve juror testimony regarding impact of extra-judicial information on verdict).

Given this evidence, the trial court was authorized to find that the state's proffer did not rebut the presumption of harm. Even if the trial court believed the proffered evidence that the comments did not affect the verdict of eleven of the jurors, the trial court could conclude from the twelfth juror's private messages that she had been influenced by the reaction of the jurors to the bailiff's comments. See *King v.*

4

*State*, 92 Ga. App. 616, 619 (89 SE2d 585) (1955) (to rebut presumption of harm, state must show that none of the jurors were influenced by the improper communication).

We are not persuaded by the state's arguments to the contrary. Based on comments made by the trial court during the hearing, the state argues that we do not owe the trial court any deference because the trial court treated the ruling as a question of law rather than fact. The state also argues that at the hearing the trial court incorrectly stated that there was a constitutional right to a hung jury. But the trial court's written order controls over any oral statements made at the hearing. *State v. Mondor*, 306 Ga. 338, 351 (3) (830 SE2d 206) (2019). Although in the written order the trial court used the term "insufficient as a matter of law" to describe the state's proffered rebuttal evidence, the trial court also made factual findings from the evidence and testimony presented to him at the hearing. And the written order made no mention of a supposed constitutional right to a hung jury. So neither of these arguments support reversal.

The state also makes various arguments that essentially amount to asking us to decide, as a matter of law, that McCargo was not harmed. To the extent these arguments ask us to disregard the state's burden of rebutting the presumption of harm

5

in favor of approaches used in other jurisdictions, we cannot do so — that burden has been well established by our Supreme Court. See *Jones*, 258 Ga. at 96-97. The state argues that this is a case where the lack of harm "speaks for itself." We disagree. It is true that "where the substance of the [improper] communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant," id. at 97, but this is not such a case. Although the state concedes that an improper communication occurred, the evidence about the precise substance of that communication conflicted. The juror who testified could not definitively state what was said, the proffered statements of the other jurors were not specific on the point, and at the hearing the bailiff denied telling the jury that there had been an earlier mistrial. See *Chambers v. State*, 321 Ga. App. 512, 520 (1) (739 SE2d 513) (2013) (physical precedent only) (in case where substance of communication was not established without contradiction, declining to apply principle that facts themselves can establish lack of harm).

Finally, the state argues that there was no harm because the jury heard the same information from trial witnesses. But in an order denying the state's motion for reconsideration the trial court found that the trial testimony to which the state pointed

6

was "easily distinguishable" from the bailiff's comments. We have reviewed the trial testimony and find no error in the trial court's assessment.

*Judgment affirmed. McMillian, P.J., and Senior Appellate Judge Herbert E. Phipps concur*.