In the Supreme Court of Georgia

Decided: October 5, 2015

S15A1045. HARRELL v. THE STATE.

HINES, Presiding Justice.

Lister W. Harrell appeals from his convictions and sentences for endeavoring to intimidate a court officer and cruelty to animals. For the reasons that follow, we reverse.

Construed to support the verdicts, the evidence showed that Harrell was charged with violating the duties of a landlord and, after he failed to appear for a court hearing in connection with that charge, a bench warrant was issued for his arrest. On April 29, 2013, Harrell placed messages on the internet site Facebook that referred to Dodge County Superior Court Clerk Rhett Walker and Deputy Chief Clerk Tammy Graham. One post threatened that if the bench warrant was not lifted, Harrell would post an internet link to a video which he claimed showed Graham engaging in sexual activity with Harrell and two other men; no such video existed. Harrell also posted a claim that Graham had lied to the court regarding whether Harrell had been served with notice of a hearing

regarding the accusation that he violated the duties of a landlord; it was his failure to appear at this hearing which served as the basis for the bench warrant being issued for him. In another post, Harrell listed Walker's personal cell phone number and urged readers to call Walker to tell him to leave Harrell alone while he was "on the run," and thus not ruin Harrell's "chicken foot eating victory." Harrell also initiated telephone communication with Walker in an attempt to persuade him to lift the bench warrant, saying that if he did not do so by a certain date, Harrell would "turn [Walker's] world upside down," and that "you know what will happen on Facebook."

At trial, evidence was also presented that on April 15, 2013, Harrell left two voice mail messages intended for Shirley Webb, Harrell's former girlfriend and the mother of two of Harrell's children. In one message, Harrell stated that he was Sid Carter, Webb's current boyfriend, was placing the call from the cell phone of Harrell's son, and referred to a "dead pussy" in Webb's mailbox. In the other message, Harrell implied that he intended to upload pornographic videos of Webb to an internet site. That same day, Carter, who lived with Webb, found a dead cat in their mailbox when he checked the mail. As Carter called 911 from his cell phone to report the dead cat, Harrell drove by the house,

2

slowed down considerably, rolled down a window, and pointed at the mailbox containing the dead cat before driving away. Carter and Webb later found an animal trap on a portion of Harrell's property which adjoined Webb's.

1. At the time of the acts alleged in Harrell's indictment, OCGA § 16-10-97 read:

(a) A person who by threat or force or by any threatening action, letter, or communication:
    (1) Endeavors to intimidate or impede any grand juror or trial juror or any officer in or of any court of this state or any court of any county or municipality of this state or any officer who may be serving at any proceeding in any such court while in the discharge of such juror's or officer's duties;
    (2) Injures any grand juror or trial juror in his or her person or property on account of any indictment or verdict assented to by him or her or on account of his or her being or having been such juror; or
    (3) Injures any officer in or of any court of this state or any court of any county or municipality of this state or any officer who may be serving at any proceeding in any such court in his or her person or property on account of the performance of his or her official duties
shall, upon conviction thereof, be punished by a fine of not more than $5,000.00 or by imprisonment for not more than 20 years, or both.
(b) As used in this Code section, the term "any officer in or of any court" means a judge, attorney, clerk of court, deputy clerk of court, court reporter, or probation officer.
(c) A person who by threat or force or by any threatening action, letter, or communication endeavors to intimidate any law enforcement officer, outside the scope and course of his or her employment, or his or her immediate family member in retaliation or response to the discharge of such officer's official duties shall be guilty of a felony and, upon

3

conviction thereof, shall be punished by imprisonment for not less than one nor more than five years, a fine not to exceed $5,000.00, or both.[1]

Harrell contends that, on its face and as applied to him, OCGA § 16-10-97 (a) (1) is unconstitutional because it violates the right of free speech found in the First Amendment to the Constitution of the United States.[2] The Supreme Court of the United States has held that a state can criminalize some speech made with the intent to intimidate another without running afoul of the First Amendment.[3] *Virginia v. Black*, 538 U.S. 343 (123 SCt 1536, 155 LE2d 535) (2003). However, we conclude that OCGA § 16-10-97 (a) (1) was unconstitutionally applied to Harrell.

In Counts 2 and 3 of the indictment, Harrell was alleged to have violated

---

[1] In 2015, an amendment to OCGA § 16-10-97 expanded the applicability of the statute under subsection (b). See Ga. L. 2015, p. 422, § 5-25.

[2] The State contends that the question of the constitutionality of OCGA § 16-10-97 (a) (1) is not properly before this Court because Harrell did not file his pleading raising the issue within 10 days of arraignment, as required by OCGA § 17-7-110. See also USCR 31.1. However, the State did not raise any such issue below, before or after the trial court's ruling on the subject, and its ability to enforce the strictures of OCGA § 17-7-110 on appeal has been waived. See *Hicks v. State*, 287 Ga. App. 105, 106 (1) (650 SE2d 767) (2007).

[3] Harrell does not challenge the constitutionality of that portion of OCGA § 16-10-97 (a) (1) which prohibits "imped[ing] any grand juror or trial juror or any [court] officer . . . ." But, we note that punishing speech that endeavors to impede the duties of a juror or court officer appears to be permissible under the First Amendment. See *Haley v. State*, 289 Ga. 515, 519-528 (2) (712 SE2d 838) (2011).

OCGA § 16-10-97 (a) (1), with both counts accusing him of

> the offense of INTIMIDATION OF A COURT OFFICER, for that [Harrell] . . . by a threatening communication, did unlawfully endeavor to intimidate [the alleged victim] while in the discharge of said officers [sic] duties, by threatening to embarrass and harass said [alleged victim if the alleged victim] did not withdraw a warrant issued by the Superior Court Judge . . . .[4]

As noted, a prohibition against intimidating another by speech does not necessarily run afoul of the First Amendment. However, in *Black*, supra, the United States Supreme Court addressed a Virginia statute that stated: "It shall be unlawful for any person or persons, with the intent of intimidating any person or group of persons, to burn, or cause to be burned, a cross on the property of another, a highway or other public place." Id. at 348 (I). In doing so, the Court stated that "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." Id. at 344 (III) (A). Thus, for intimidation such as alleged in the indictment to be validly proscribed by OCGA § 16-10-97 (a) (1), the intimidation must be

---

[4] We note that by requiring that the defendant "did . . . endeavor" to intimidate a court officer "while in the discharge" of his or her duties, OCGA § 16-10-97 (a) (1) does not have as an element of the crime that the intimidation be directed at procuring an act which the court officer is actually empowered to perform.

5

considered a "true threat."  And, as *Black* noted, "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. [Cits.]" Id. at 359.

"[I]n cases raising First Amendment issues . . . an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.' [Cits.]" *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (II) (104 SCt 1949, 80 LE2d 502) (1984).  See also *New York Times Co. v. Sullivan*, 376 U.S. 254, 284-285 (84 SCt 710, 11 LE2d 686) (1964).  When determining whether "'an intent to inflict bodily harm' exists, the speech is examined in the 'light of its entire factual context, including the surrounding events and reaction of the listeners.' [Cit.]" *Corales v. Bennett*, 567 F.3d 554, 564 (III) (A) (9th Cir. 2009).  A "true threat" may be conditional, need not be explicit, and the threatened violence need not be imminent. *United States v. Turner*, 720 F3d 411, 424 (2d Cir. 2013).  "A true threat 'convey[s] a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected vehement, caustic . . .  unpleasantly sharp attacks on

6

government and public officials.' [Cit.]" *Nielander v. Board of County Com'rs of County Republic, Kan.*, 582 F.3d 1155, 1168 (II) (B) (2) (a) (10th Cir. 2009).

As to Count 2 of the indictment, naming Graham as the victim, the only evidence was that Harrell posted embarrassing material about Graham, and threatened to post more. The fact that Harrell's communications were made only by Facebook and that he did not communicate with Graham directly would not preclude their being considered "true threats." See *United States v. Castillo*, 564 Fed. Appx. 500, 502-503 (11th Cir. 2014). But, although Harrell's posting was on a Facebook group titled "DixieMafia," it only suggested that she had lied to the court and that such would lead to her arrest, and that an embarrassing video of her would be released; nothing in the communications threaten an unlawful act of violence to her as required by *Black*, supra.

As to Count 3 of the indictment, naming Walker as the victim, Walker testified that after Harrell's telephone call, he "had to think about it and try to keep from getting a little nervous because I knew from what was going on that [Harrell] may not have been stable mentally, and so it concerned me." He also testified that he "felt intimidated" by Harrell's Facebook posting and telephone call, and was "concerned" when Harrell stated that he "would turn [Walker's]

world upside down," but he did not testify that his concern was related to any fear of violence. There was no reference to any form of violence in Harrell's communications, nor even an intimation of such. See *Black*, supra. While Harrell's speech might well be described as caustic and unpleasant, *Nielander*, supra, it did not convey "a serious expression of an intent to commit an act of unlawful violence." *Black*, supra.[5]

Although the State notes that OCGA § 16-10-97 (a) (1) prohibits endeavoring to impede a court officer through communication, and asserts that Walker and Graham were impeded in the discharge of their duties by virtue of Harrell's speech, the State did not charge Harrell with impeding court officers, or any other crimes that might have been implicated by his behavior, but only with endeavoring to intimidate the alleged victims. And, as his speech cannot be considered to constitute "true threats," and thus does not constitute any proscribable act of intimidation, his convictions for violating OCGA § 16-10-97 (a) (1) must be reversed.

---

[5] We note that the court did not instruct the jury on the meaning of "intimidate" or "true threat," nor were such instructions requested. However, our resolution of this issue renders moot any question of whether these omissions constituted plain error under OCGA § 17–8–58 (b). See *Cheddersingh v. State*, 290 Ga. 680, 683 (2) (724 SE2d 366) (2012).

2. Harrell further contends that he should not have been tried on the animal cruelty charge in the same proceeding in which he had to answer the charges of endeavoring to intimidate court officers, and that the trial court erred in denying his motion to sever the counts.[6] While in some circumstances joinder of charges is required, see OCGA § 16-1-7 (b),[7] the ability of the State to join charges is not unfettered. In *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975), this Court adopted the ABA Standards on Joinder of Offenses, under which

---

[6] Harrell also asserts that dismissal of the entire indictment is the proper remedy when multiple charges that should have been severed are presented in the same indictment, but the case he cites for that proposition does not so hold, rather it merely reversed the trial court based upon the specific pleadings in the case, which sought severance as an alternative remedy to quashing the indictment. See *Fair v. State*, 129 Ga. App. 565 (200 SE2d 296) (1973).

[7] OCGA § 16-1-7 reads:

(a) When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if:

    (1) One crime is included in the other; or
    (2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

(b) If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution except as provided in subsection (c) of this Code section.

(c) When two or more crimes are charged as required by subsection (b) of this Code section, the court in the interest of justice may order that one or more of such charges be tried separately.

9

[t]wo or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both: (a) are of the same or similar character, even if not part of a single scheme or plan; or (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Id. at 463 (Punctuation omitted.) Further, when

two or more offenses are joined on grounds that they are of the same or similar character, and are part of a single scheme or plan, or are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, the trial court, in its discretion, should grant a severance of offenses if it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence of each charge; in this regard, the question for decision is whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

*Terry v. State*, 259 Ga. 165, 168 (1) (377 SE2d 837) (1989).

Harrell asserts that joinder of the animal cruelty charge with the other charges was improper, as the acts alleged are not part of a single scheme or plan, are not based on the same conduct or series of acts, and are not of the same or similar character. See *Dingler*, supra. Accordingly, he urges, the trial court erred in denying his motion to sever the charges, and we agree.

Of course, cruelty to an animal and endeavoring to intimidate a court

10

officer are not, judging by their statutory elements, similar crimes. Nor do the facts surrounding the commission of the acts alleged exhibit the basis for a proper joinder of charges. The indictment alleged that animal cruelty was committed on April 16, 2013, and that Harrell endeavored to intimidate the court officers on April 29, 2013. Although the acts were alleged to have been committed in close proximity of time, the record is devoid of any indication that they were committed in pursuit of some common scheme or that they had some connection. As alleged, they were simply separate crimes of different character, committed 13 days apart.

The State contends that the similarity between the acts alleged "reaches the level of a pattern." *Cooper v. State*, 253 Ga. 736, 737 (3) (325 SE2d 137) (1985). But, there is no evidence of such. The State asserted at the hearing on the motion to sever, and now asserts in this Court, that Harrell used the dead cat, and thus the results of the act of animal cruelty, "to intimidate or otherwise hinder [Webb] from continued participation in [Harrell's] court case[]," and that Harrell thus had a "common motive" in making communications intended to intimidate Walker, Graham, and Webb, all in relation to court cases involving him. However, this argument is necessarily dependant on the claim that at the

11

time of the animal cruelty, Webb was involved in a court case of Harrell's. But, the State made absolutely no showing in this regard; neither at the pre-trial motion hearing, nor at trial, did the State attempt to produce any evidence to support its statement to the trial court that Webb was "a witness in one court action" involving Harrell.

While there was testimony that there had been prior custody disputes between Webb and Harrell, that Carter described as "bitter," there was no testimony that would allow an inference that there was any case existing between Webb and Harrell at the time of the acts alleged. Nor did the messages that Harrell left on Webb's answering machine contain any reference to a court case of Harrell's.[8]

And, there was no evidence that Harrell's motive for contacting Webb was to attempt to intimidate her into any action. Of course, that Harrell had the motive to intimidate his victims to take certain actions was explicitly set forth in the allegations regarding his acts toward Graham and Walker. Nor was the evidence of animal cruelty so intertwined with evidence of endeavoring to

---

[8] Even if the use of a telephone to make an allegedly threatening call to Walker can be seen as similar to the use of a telephone to make arguably harassing calls to Webb, such would not authorize joinder. Rather, if "charges are joined solely because they are of the same or similar character, a defendant has an absolute right to sever. [Cits.]" *Stewart v. State*, 277 Ga. 138, 139 (587 SE2d 602) (2003).

intimidate court officers such that it would not be possible to present evidence of one without the other.  See *Carter v. State*, 269 Ga. 420, 422 (3) (499 SE2d 63) (1998); *Radford v. State*, 251 Ga. 50, 51 (2) (302 SE2d 555) (1983).  Rather, there was simply no connection shown between the alleged animal cruelty and the alleged crimes of endeavoring to intimidate court officers.  As there was no showing that the crimes alleged were based on the same conduct, were part of a single scheme or plan, or were a series of connected acts, joinder was not authorized.  *Dingler*, supra.

Further, the failure to sever the counts must be considered harmful error. The crime of endeavoring to intimidate a court officer is of an entirely different nature than animal cruelty, and the posture of the defense would have been dramatically different had severance been granted, and had the State presented only evidence regarding the charge of cruelty to an animal, without the additional, and prejudicial, evidence regarding Harrell's communications to and about Walker and Graham being placed before the jury.  See *Carter v State*, 261 Ga. 344, 345 (1) (404 SE2d 432) (1991).  Further, Counts 2 and 3 were allegations that should not even have been presented to a jury, whether joined with Count 1 or standing by themselves.  See Division 1, supra.  The prejudicial

effect of having to defend the charge of animal cruelty when joined with dissimilar, unconnected charges is exacerbated when those charges are not themselves properly presented for prosecution. The presentment of the joined charges to the jury in this case serves to demonstrate the value of severance of charges, which helps to prevent a defendant from being forced to proceed "at an unfair disadvantage, due to confusion of law and evidence by the trier of the fact and the 'smear' effect such confusion can produce." *Dingler*, supra at 463 (Punctuation omitted.) See also *Brown v. State*, 230 Ga. App. 190, 193-194 (2) (495 SE2d 858) (1998). In these circumstances, Harrell's conviction on the charge of animal cruelty must be reversed.

3. As Harrell could be retried for cruelty to animals, we must address his contention that the evidence was insufficient to support his conviction for that crime. See *Dinning v. State*, 267 Ga. 879, 880 (485 SE2d 464) (1997).[9] The jury could have inferred from the evidence presented that Harrell trapped the cat, killed it, and placed it in Webb's mailbox, and the evidence thus authorized a rational trier of fact to find beyond a reasonable doubt that Harrell was guilty

---

[9] We note that, as he was convicted of the lesser included crime of cruelty to animals, Harrell cannot be re-tried for the crime of aggravated cruelty to animals set forth in the indictment. See *Williams v. State*, 288 Ga. 7, 8-12 (2) (700 SE2d 564) (2010).

14

of the crime of cruelty to animals. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

4. The indictment was not subject to a special demurrer as it sufficiently informed Harrell of the animal cruelty charge he must be prepared be to meet. See *State v. Wyatt*, 295 Ga. 257, 260 (2) (789 SE2d 500) (2014); *Little v. State*, 278 Ga. 425, 428 (4) (603 SE2d 252) (2004).

5. Harrell's remaining enumerations of error are either rendered moot by our reversal of his convictions or are unlikely to recur on retrial. See *Jones v. State*, 292 Ga. 656, 662-663 (3) (740 SE2d 590) (2013).

Judgments reversed. All the Justices concur.