304 Ga. 851
FINAL COPY

S18A1208. MIMS v. THE STATE.

PETERSON, Justice.

Skyy Raven Marie Mims was convicted of malice murder and other crimes related to the stabbing death of Dahyabhai Chaudhari during an armed robbery and of theft by bringing a stolen vehicle into the state.[1] Following an earlier remand by this Court, Mims appeals and argues that the evidence was insufficient to sustain her theft conviction, her trial counsel rendered ineffective assistance, and her due process rights were violated when the trial court denied

[1] Chaudhari was killed on March 9, 2014. On May 29, 2014, a Whitfield County grand jury indicted Mims for malice murder, four counts of felony murder (two predicated on aggravated assault, one predicated on armed robbery, and one predicated on burglary), two counts of aggravated assault, armed robbery, burglary, possession of a knife during the commission of a felony, and theft by bringing stolen property into the state. Following a jury trial held from April 27 to May 1, 2015, the jury found Mims guilty of all charges. The trial court sentenced Mims to life without parole for malice murder, a concurrent life term for armed robbery, a concurrent five-year term for burglary, a consecutive five-year term for possession of a knife during the commission of a felony, and ten years concurrent for the theft offense. All other counts were merged or vacated as a matter of law. The trial court denied Mims's motion for new trial in December 2016, she appealed, and we remanded the case for the trial court to consider Mims's claims that her counsel at the hearing on her motion for new trial was ineffective. The trial court considered the additional ineffectiveness claims and denied them on remand, and Mims filed a new notice of appeal. Mims's case was docketed to this Court's August 2018 term and submitted for a decision on the briefs.

her request to be present at the motion for new trial hearing on remand in order to support her ineffectiveness claims. We reverse Mims's theft conviction because trial counsel was ineffective for failing to move to sever this count from the murder-related offenses. All of the remaining ineffectiveness claims against trial counsel fail, and because these claims fail for reasons independent of her absence at the hearing, her due process rights were not violated. Therefore, we affirm in part and reverse in part.

Viewed in the light most favorable to the jury verdicts, the trial evidence showed the following. On January 30, 2014, Christopher Sears drove his fiancée's car, a green 2012 Kia Soul, to work in the Detroit, Michigan area. Before he left work for the day, Sears had his boss start the car and left it running to warm up while Sears remained inside to finish his work. Sears saw someone about six feet tall climb into the car and drive away in the vehicle. Sears did not get a good look at the thief, who was shielding his or her face with a hooded sweatshirt, but told the police that he thought the thief was a white male. Sears testified that the thief had "blondish-brown, crinkly, curly" hair. Sears's wallet was in the console of the car when it was stolen, and the vehicle

had a Michigan State University license plate frame. The car was reported stolen, and insurance paid about $11,000.

Mims, a black woman about six feet tall, lived in Detroit around the time of the theft. Shortly after the theft, Mims announced on Facebook that she had moved to Atlanta. Upon arriving in Georgia, Mims initially lived in a green 2012 Kia Soul before eventually moving into a house with Kylle Harewood, Harewood's girlfriend, and the girlfriend's family.

Sometime in early March 2014, Mims became very happy when she thought she had a winning lottery ticket, but Harewood told her it was not a winning ticket. Afterward, Mims talked about all the things she could do if she won money. On March 8, Mims purchased a red bandana, gloves, a roll of red duct tape, a fish fillet knife, and an Airsoft pistol that she painted to make it look like a real gun. Later that day, Harewood, with others nearby, asked Mims about the duct tape she had placed on the bottom of her shoes. Mims replied jokingly that "the less [they] know, the better" and "I'm going to go in there, ask them how much is in the register."

The next day, Mims drove a 2012 green Kia Soul to three different gas stations in Whitfield County. The clerks at the first two stores testified that

3

Mims acted strangely, and one clerk said that Mims had asked how much money was in the register and whether the store had a safe.

Mims entered the third gas station, a Kanku's Express. Mims had burnt-orange colored blond hair, wore a black hooded sweatshirt and gloves, and carried a bag over her shoulder. She went to the bathroom, stayed there for some time, and briefly spoke to the store clerk, Chaudhari, upon exiting the bathroom. She left the store and waited outside until all the customers and cars left, at which point she reentered the store and immediately went back to the bathroom. Mims exited the bathroom wearing a white hooded sweatshirt, a red bandana, and a roll of duct tape on her right wrist. Holding what appeared to be a gun, Mims ran toward Chaudhari; Chaudhari tried to flee into the kitchen at the back of the store and unsuccessfully attempted to close a door on Mims. The two struggled, causing Mims to drop the gun. Mims pulled out a knife and stabbed Chaudhari twice. Mims closed the door to the kitchen and covered Chaudhari's mouth and eyes with red duct tape. Mims then began to apply pressure to Chaudhari's nose and mouth area and suffocated him until he stopped moving. Mims collected some of her things, rummaged through Chaudhari's pockets, and grabbed a roll of lottery tickets and money from the cash register before she left.

Several customers entered the store soon after Mims left, discovered Chaudhari's body, and called the police. When police arrived, they found Chaudhari lying in a large pool of blood and a cell phone next to Chaudhari that was later connected to Mims. The events at Kanku's Express were captured by surveillance cameras, and the video recording was played for the jury. Chaudhari died from the stab wounds.

Police later located Mims at her residence and saw the Kia Soul parked outside. After police arrested Mims, they searched the residence and found approximately 80 $500-a-week-for-life lottery tickets, keys to the Kia Soul, a pair of large sunglasses, and a white hooded sweatshirt. Police also searched the Kia Soul and found additional $500-a-week-for-life lottery tickets, a pair of black boots with red duct tape on the soles, gloves with red duct tape on them, and a black bag containing a roll of red duct tape, a knife with red duct tape on the handle, and an Airsoft pistol. DNA analysis revealed that Chaudhari's blood was found on the knife, the gloves had blood from Chaudhari on the outside and Mims's DNA on the inside, and the red duct tape tested positive for Chaudhari's DNA.

5

Police also found several other items inside the vehicle: Mims's wallet containing a MasterCard belonging to Sears; a Michigan State University license plate frame in the back hatch; and Sears's wallet and driver's license in the hatch. Police also discovered that the license tag number had been altered. The Kia Soul also contained personal items belonging to Mims, including documents and receipts issued to Mims before January 30, 2014, that were from Michigan, and documents and receipts bearing later dates that were created in Georgia.

1. *The evidence was sufficient to sustain Mims's convictions.*

(a) Mims argues that the evidence was insufficient to sustain her conviction for theft by bringing stolen property into the state. We disagree.

When we consider the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and inquire only whether any rational trier of fact might find beyond a reasonable doubt that the defendant is guilty of the crimes of which she was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); White v. State, 293 Ga. 523, 523 (1) (753 SE2d 115) (2013). Under this review, we must "put aside any questions about conflicting evidence, the credibility of witnesses, or the weight

of the evidence, leaving the resolution of such things to the discretion of the trier of fact." White, 293 Ga. at 523 (1).

OCGA § 16-8-9 provides that "[a] person commits the offense of theft by bringing stolen property into this state when he brings into this state any property which he knows or should know has been stolen in another state." A defendant's knowledge that goods are stolen can be established by direct evidence or circumstantial evidence that would, in the opinion of the jury, lead a reasonable person to believe that the property was stolen. Cunningham v. State, 222 Ga. App. 740, 742 (1) (b) (475 SE2d 924) (1996). As the offense was charged in the indictment, the State also had to prove that the stolen Kia Soul had a value of at least $5,000. See OCGA § 16-8-12 (a) (1) (B).

There is no dispute that the 2012 Kia Soul found in Mims's possession in Georgia was stolen in Michigan, and the evidence authorized a jury to find that Mims brought the vehicle into Georgia. The stolen vehicle contained documents belonging to Mims that were issued in Michigan around the time of the theft, and Mims announced she was in Georgia and was living out of that same vehicle just days after the theft. See Smith v. State, 256 Ga. App. 22, 23 (567 SE2d 359) (2002) (jury could conclude that defendant brought stolen vehicle into the state

7

where the evidence showed that defendant had possession of the car in another state after the theft).

The evidence also authorized a finding that Mims knew or should have known that the car had been stolen. Indeed, the evidence supported a finding that Mims stole the vehicle. Sears reported that the vehicle was stolen in Michigan by someone who was about six feet tall and had "blondish-brown, crinkly, curly" hair. Mims was living in Detroit at the time of the theft, is about six feet tall, and had burnt-orange colored blond hair at the time of the offenses in Georgia. Although Mims cites Sears's statements to police in which he said he thought a white male stole the vehicle, Sears testified at trial that he did not see the thief's face or "skin features." In any case, it was the jury's role to resolve any conflicts or inconsistencies in the evidence. See Williams v. State, 287 Ga. 199, 200 (695 SE2d 246) (2010).

Contrary to Mims's claim, the State presented evidence of the car's value. There was evidence that the insurance company paid about $11,000 after the vehicle was reported stolen. As a result, the evidence was more than sufficient to sustain Mims's theft conviction.

(b) Although Mims does not challenge the sufficiency of the evidence with respect to the other offenses, including her murder conviction, it is our customary practice in murder cases to review the record and determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence summarized above was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Mims was guilty of the other offenses for which she was convicted. See Jackson, 443 U. S. at 319.

2. Mims argues that her trial counsel was ineffective in several respects. To prevail on any of her claims, Mims must show both that her counsel's performance was constitutionally deficient and that she was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Mims must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." Simmons v. State, 299 Ga. 370, 375 (3) (788 SE2d 494) (2016) (citation and punctuation omitted). Decisions made as a matter of trial strategy and tactics do not amount to

ineffective assistance of counsel unless "they were so patently unreasonable that no competent attorney would have followed such a course." Id.

To prove that she was prejudiced by any deficient performance of her lawyer, Mims must show "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Shaw v. State, 292 Ga. 871, 874 (3) (742 SE2d 707) (2013) (quoting Strickland, 466 U. S. at 694). Where an appellant fails to meet her burden in satisfying one prong of the Strickland test, we need not review the other, as a failure to meet either of the prongs is fatal to an ineffectiveness claim. See Lawrence v. State, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010).

(a) Mims first argues that trial counsel was ineffective for failing to pursue a defense based on insanity or mental illness at the time of her offenses. We disagree.

In October 2014, trial counsel filed a motion for a mental health evaluation, and the trial court granted that motion. Mims was evaluated by psychologist Dr. Samuel Perri in November 2014. After two interviews, Dr. Perri had Mims admitted to Central State Hospital on November 12, 2014. Dr.

10

Perri explained at a March 2015 competency hearing that, although "there ha[d] never been a question . . . pertaining to [Mims's] competency" because she had always been aware of the charges against her and the possible consequences, he committed her to Central State because he wanted more time to evaluate her given the seriousness of the charged offenses and the questions he had about her psychiatric condition, particularly in the light of information he had received from her family.[2]

At the March 2015 competency hearing, Dr. Perri testified that he evaluated Mims again on January 15, 2015, and she was discharged from Central State shortly thereafter. Dr. Perri reported that Mims did not exhibit any active symptoms of psychosis or behavioral disturbances when he first evaluated her or at any point during her hospitalization at Central State.[3] Based on observations of Mims, she was diagnosed as having a bipolar disorder with a possible personality disorder, and doctors considered Mims's judgment and

---

[2] The family reported that in the 18 months preceding Mims's move to Georgia, Mims had become violent, aggressive, withdrawn, and paranoid and stopped taking care of her personal hygiene. Mims had gone to the emergency room at least twice for mental health purposes but was not psychiatrically admitted.

[3] Doctors recommended that Mims take anti-psychotic medication to avoid symptoms that might be induced by stress, but Mims refused.

impulse control to be impaired. Nevertheless, Dr. Perri testified that he believed Mims was competent because she understood the nature of her charges and the seriousness of the offense, understood basic courtroom procedures, and demonstrated an ability to communicate effectively with her attorney. After Dr. Perri testified, trial counsel conceded that Mims was competent to stand trial and added that Mims was able to assist her in developing theories for trial. No evaluation as to Mims's sanity at the time of the offenses was ever conducted.

Mims argues that trial counsel was ineffective for failing to obtain an expert evaluation and for failing to pursue an insanity or mental health defense based on the evaluation. Trial counsel testified on remand, however, and the trial court implicitly credited her testimony that she reviewed Dr. Perri's report, had several conversations with him about it, and, based on those conversations, did not believe that Mims met the criteria for an insanity plea. It is true that Dr. Perri was evaluating Mims's competency only. See Brown v. State, 215 Ga. 784, 786 (1) (113 SE2d 618) (1960) ("[A defendant] may have mental capacity to be placed on trial, and yet be insane within the contemplation of the law as to responsibility for a criminal act." (citation and punctuation omitted)). But even if trial counsel was deficient for failing to secure an expert evaluation as to

Mims's sanity, Mims has failed to establish prejudice. Mims did not present any evidence that she had ever been evaluated by an expert or that a psychologist reviewed the record and formed an opinion as to her culpability at the time of the offense, and speculation about results if she had is not enough. As a result, Mims has not shown what the result of any additional examination would have been, and thus fails to show that the result of her trial would have been different if such an evaluation had been pursued. See Arnold v. State, 292 Ga. 268, 272-273 (2) (b) (737 SE2d 98) (2013) (no prejudice from failure to request mental health evaluation where psychologist who testified at the motion for new trial hearing could not give an opinion as to whether defendant was suffering from mental health issues at the time of the offense).

(b) Mims next argues that trial counsel was ineffective for failing to move to sever the theft count (for bringing a stolen vehicle into the state) from the murder-related offenses, because the theft offense was not of a similar character to the murder-related counts, was not based on the same conduct, and did not involve the same victims or witnesses. Mims further argues that, although her possession of the Kia Soul was probative of identity of the perpetrator of the murder-related offenses because the car was used during the commission of

13

those offenses, the fact that the car was stolen was completely irrelevant for this purpose. Mims notes that trial counsel testified that she probably should have moved to sever the theft count. We agree with trial counsel's assessment of her performance.

> [T]wo or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both: (a) are of the same or similar character, even if not part of a single scheme or plan; or (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Harrell v. State, 297 Ga. 884, 889 (2) (778 SE2d 196) (2015) (citation and punctuation omitted).

There is no argument, much less a showing, that the theft offense and the murder-related offenses were parts of a single scheme or plan or that the offenses were of a similar character. The crimes were committed about a month apart and involved different victims in different states. The State argued, and the trial court found, that severance was not required because the evidence of the theft offense was relevant to establish the identity of the murderer. Although it is undisputed that Mims's possession of the Kia Soul connected her to the murder, the fact that the car was stolen or that Mims brought the stolen vehicle

to Georgia from another state had no bearing on any of the murder-related offenses. Because the evidence of theft was not "so intertwined" with evidence of the murder "such that it would not be possible to present evidence of one without the other," the joinder of the offenses was not authorized. Harrell, 297 Ga. at 891 (2). Trial counsel was therefore deficient for failing to move to sever the theft count.

Having decided that trial counsel was deficient, we must assess whether this deficiency prejudiced Mims. As to the murder-related offenses, Mims has not demonstrated that she was prejudiced by counsel's failure because of the overwhelming evidence of guilt. That evidence included a video recording of the incident, her possession of the Kia Soul that was used during the commission of those offenses, her possession of lottery tickets taken from the gas station, and her possession of a knife and gloves that contained the victim's blood and Mims's DNA. It is highly unlikely that the evidence that the Kia Soul was stolen affected the outcome of the murder-related charges.

We reach a different conclusion as to the theft offense. Our discussion in Division 1 (a) reveals that the evidence was sufficient to support the theft conviction, but it was hardly overwhelming. In particular, the evidence that

15

Mims knew or should have known the vehicle was stolen was not very strong. Given Sears's report that the thief was a white male, we cannot say that there was overwhelming evidence that Mims stole the vehicle. And though there was sufficient evidence to support the inference that Mims knew or should have known the vehicle was stolen — such as the altered vehicle tag and the presence of another person's (Sears's) personal belongings — the inference created by this evidence is not overwhelming. On the other hand, the evidence of Mims's participation in a gruesome murder was very prejudicial to the jury's consideration of the theft offense. See, e.g., Harrell, 297 Ga. at 891 (2) (failure to sever charge that was of "an entirely different nature" was harmful because the posture of the defense would have been dramatically different). Accordingly, we reverse Mims's theft conviction, although, because the evidence was sufficient, she may be retried.

(c) Mims argues that trial counsel was ineffective for failing to file a motion to change venue due to the volume and inflammatory nature of the pre-trial publicity. We disagree.

Trial counsel testified that she decided against filing a motion to change venue because the case had received some national attention and she did not

16

believe another county would necessarily be more favorable to the defense. Mims presents no evidence or authority to show that no competent attorney, under similar circumstances, would have made the same decision. See Wilson v. State, 286 Ga. 141, 143 (3) (686 SE2d 104) (2009) (explaining that whether to file a motion to change venue is a matter of trial strategy that generally does not amount to ineffective assistance); see also Burrell v. State, 301 Ga. 21, 25 (2) (d) (799 SE2d 181) (2017) ("[A] defendant who contends a strategic decision constitutes deficient performance must show that no competent attorney, under similar circumstances, would have made it." (citation and punctuation omitted)).

Moreover, because trial counsel cannot be deficient for failing to file a meritless motion, Mims would have to show that a motion to change venue would have been granted had counsel made the motion. See Burrell, 301 Ga. at 25 (2) (d) (discussing failure to file motion to suppress). To prevail on a motion to change venue, a defendant must show either that (1) the setting of the trial was inherently prejudicial or (2) the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. Powell v. State, 297 Ga. 352, 354 (2) (773 SE2d 762) (2015). Mims cannot make the first showing,

because she cannot establish that the widespread pre-trial publicity "contained information that was unduly extensive, factually incorrect, inflammatory or reflective of an atmosphere of hostility." Id. (citation omitted) (noting that cases of inherent prejudice are "extremely rare"). Although trial counsel stated that the case received national attention, most of the newspaper articles submitted by Mims in support of her motion for new trial were published during or after the trial, and the pre-trial articles did not contain inflammatory content, as they simply reported details about Mims's competency hearing and why the trial had been delayed (trial counsel was ill).

Mims also has not established that the pre-trial publicity resulted in actual prejudice in this case. Mims cites the comments of four prospective jurors, at least two of whom were excused for cause for admitting they had a fixed opinion about Mims's guilt. As to the other two, one juror said that he had an opinion on the case, but did not respond when the jury pool was asked whether anyone would have a problem remaining impartial or deciding the case based only on the evidence. The fourth juror merely said she heard about the case and said she did not have an opinion about it and could remain impartial and decide the case upon the evidence. Neither of those two jurors was selected. Given this

evidence, Mims cannot establish actual prejudice in the jury selection process, because the key question in this context is "whether those jurors who had heard about the case could lay aside their opinions and render a verdict based on the evidence." Gear v. State, 288 Ga. 500, 502 (2) (705 SE2d 632) (2011) (citation and punctuation omitted).

In sum, because Mims cannot establish that a motion to change venue would have been granted, she cannot establish that trial counsel was ineffective for failing to file one.

(d) Mims finally argues that trial counsel was ineffective for failing to pursue plea negotiations. The trial court found that trial counsel was not ineffective because Mims never requested a plea offer or expressed any interest in one. In reaching this conclusion, the trial court relied on representations by the prosecutor prior to trial that, although the prosecutor and trial counsel had very brief conversations on the topic, the prosecutor never extended a plea offer because none was requested. Mims does not challenge this finding.

Even if trial counsel had a duty to initiate plea negotiations, but see Blount v. State, 303 Ga. 608, 613 (2) (g) (814 SE2d 372) (2018) (referencing case law to the effect that "the authority and discretion to plea bargain rest with the State"

19

(citation and punctuation omitted)), Mims has failed to establish prejudice. For ineffectiveness claims related to plea offers that are not communicated to the defendant or are rejected due to counsel's deficient advice, the defendant must establish prejudice by showing:

> [(1)] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [(2)] that the court would have accepted its terms, and [(3)] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Gramiak v. Beasley, 304 Ga. 512, 515 (I) (B) (820 SE2d 50) (2018) (citing Lafler v. Cooper, 566 U. S. 156, 164 (132 SCt 1376, 182 LE2d 398) (2012)); see also Blount, 303 Ga. at 613 (2) (g) (appellant has to show that "it was reasonably probable that [the State] would have offered [appellant] a particular plea deal, that the deal would have resulted in a sentence less than life in prison, and that the court would have accepted the deal's terms" (citation and punctuation omitted)). Mims has failed to make the requisite showing.

On the first factor, Mims has failed to show a reasonable probability that the State would have offered a particular plea deal or that she would have

20

accepted it. The prosecutor said that no offer was made because none was requested, but it does not necessarily follow that the prosecutor would have made a particular plea deal if one was requested. There is also no evidence that Mims would have accepted any particular plea deal. Trial counsel testified that she did pursue plea negotiations, and that plea negotiations with the State were not fruitful, because Mims would have had to admit her guilt, suggesting that she was unwilling to do so. Mims presents no evidence to refute trial counsel's statement. Although, as discussed below, Mims was not present at the motion for new trial hearing, she did file a proffer of what she would have testified to if allowed at the hearing. In her proffer, Mims merely stated that trial counsel did not discuss a plea deal with her. She never indicated that she would have accepted a plea deal, much less any specific plea deal. On the second and third factors, there is no evidence whatsoever that any plea deal would have been favorable to Mims or that the trial court would have accepted such a deal. As a result, Mims cannot establish prejudice from any failure by trial counsel to pursue a plea deal.

3. Mims next argues that the trial court erred in denying her presence at a motion for new trial hearing. This claim is without merit.

21

Mims was not present at the motion for new trial hearing held after her conviction. She appealed following the denial of her new trial motion, but we remanded the case to the trial court for the limited purpose of considering the ineffectiveness claim raised against first appellate counsel. On remand, Mims alleged that first appellate counsel was ineffective for failing to secure trial counsel's or Mims's attendance at the first motion for new trial hearing in order to support her claims that trial counsel was ineffective. One day before the scheduled hearing, at 4:32 in the afternoon, Mims filed a proffer purporting to show that her testimony was relevant to her ineffectiveness claims against trial counsel. At the hearing, second appellate counsel asked the court to secure Mims's presence if the court would not accept everything in Mims's proffer as true. The trial court denied the request and, in a written order, found that first appellate counsel was not ineffective for failing to secure her presence or trial counsel's presence at the first motion for new trial hearing.

Mims now argues that the trial court erred by denying her request to be present at the hearing on remand. Mims acknowledges that she had no unqualified right to be present, see, e.g., Bozzie v. State, 302 Ga. 704, 713 (5) (808 SE2d 671) (2017), but argues that, based on case law from our Court of

22

Appeals that in turn relies on case law from the Eleventh Circuit considering federal due process concerns, her presence was required because it would have contributed to the fairness of the hearing. The United States Supreme Court has explained, however, that "[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by [her] absence, and to that extent only." United States v. Gagnon, 470 U. S. 522, 526 (105 SCt 1482, 84 LE2d 486) (1985) (quoting Snyder v. Massachusetts, 291 U. S. 97, 107-108 (54 SCt 330, 78 LE 674) (1934)).

Mims's proffer purportedly supported her ineffectiveness claims against trial counsel, but she has failed to show any due process violation from her absence at the hearing. In her proffer, Mims claimed that she has schizophrenia, did not understand what was going on at trial, and "was not in her right mind" at the time of the murder. The thrust of her ineffectiveness claim, however, was that trial counsel was ineffective for not securing expert testimony to support such a mental health defense. Although the evidence to which Mims's proffer refers may have been relevant as to whether counsel was deficient for failing to obtain an expert evaluation regarding her sanity at the time of the offense, we assumed above that trial counsel was deficient in this respect and nevertheless

23

concluded that Mims did not establish prejudice, because she offered no expert testimony. Her presence would not have cured this omission because Mims was not a mental health expert.

Mims also claimed in her proffer that she asked trial counsel to file a motion to change venue. But even if she did, such a request would have been futile for reasons explained above in addressing trial counsel's purported ineffectiveness on this ground. Therefore, her presence was not required for this issue either.

The last claim raised by Mims's proffer relates to her claim that trial counsel was ineffective for failing to pursue a plea deal. But as discussed above, even if trial counsel was deficient in this respect, Mims failed to establish prejudice as a result, even when considering the details of her proffer. Consequently, there was no harm in denying her request to be present for the motion for new trial hearing.

Judgment affirmed in part and reversed in part. All the Justices concur, except Bethel, J., not participating.

Decided January 22, 2019.

Murder. Whitfield Superior Court. Before Judge Partain, Senior Judge.

Micah J. Gates, Natalie K. Glaser, for appellant.

Herbert M. Poston, Jr., District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.