307 Ga. 284
FINAL COPY

S19A1109. HOWARD v. THE STATE.

PETERSON, Justice.

Following a jury trial, Bruce Howard was convicted of malice murder and other crimes in connection with the shooting death of Jaylon Maddox during an attempted robbery. On appeal, Howard challenges only the sufficiency of the evidence used to convict him. But there was sufficient evidence, so we affirm.[1]

Viewed in the light most favorable to the jury's verdicts, the

---

[1] The crimes occurred on January 6, 2016. In April 2016, a DeKalb County grand jury indicted Howard for malice murder (Count 1), felony murder (Count 2), three counts of aggravated assault (Counts 3, 8, 9), three counts of attempt to commit a felony for attempting to rob Maddox and two other men (Zeric Henderson and Justin Sellers) (Counts 4, 6, 7), and one count of possession of a firearm during the commission of a felony (Count 5). Following a jury trial in March 2017, the jury found Howard guilty on all counts. The trial court sentenced Howard to life with the possibility of parole on Count 1, ten years concurrent on Count 4, twenty years on Count 6 to run consecutive to Count 4, ten years on Count 7 to run consecutive to Count 6, and five years on Count 5 to run consecutive to all counts. All remaining counts were vacated by operation of law or were merged for sentencing purposes. In April 2017, Howard timely filed a motion for new trial, which he subsequently amended in December 2018. Following a hearing, the trial court denied Howard's motion for new trial on January 18, 2019. Howard timely appealed, and his case was docketed to this Court's August 2019 term and submitted for a decision on the briefs.

evidence presented at trial showed the following. On January 6, 2016, fifteen-year-old Maddox and his brother Zeric Henderson went to Justin Sellers's apartment to hang out after school, and Tashon Soldric came by later that evening. The group left the apartment around 9:00 p.m. to go to a nearby store.

While walking to the store, Sellers and Henderson saw a white Pontiac driving around the apartment complex. The group continued walking, and Sellers and Henderson later saw the car parked along the side of the road. As the group walked by, Howard exited the car and pointed a gun at Henderson, Sellers, and Maddox, demanding that they "give it up" and stating, "You know what time it is." Soldric, who had walked ahead, turned around, pulled up his shirt, and revealed to Howard that he also had a gun. Howard opened fire, shooting Maddox in the buttocks and Sellers in the arm. Soldric returned fire, striking Sellers in the stomach in the cross-fire. Howard fled in the white Pontiac.

Several 911 calls were made with reports that a white Pontiac was involved in a shooting. When police arrived, Maddox was

unresponsive and bleeding heavily from his leg; he later died as a result of a gunshot wound that pierced his femoral artery. The bullet that struck Maddox was not recovered. While processing the crime scene, police officers recovered two 9mm shell casings and five .380 shell casings. Sellers gave police a description of the vehicle and provided a partial number of the license plate.

On January 7, Laterrica Yearby saw a news story about the shooting on her lunch break and learned that police were looking for her white Pontiac. Yearby called the police and, during an interview, said that she was at Howard's house on the evening of January 6 with Howard, Jacarlos Jeffries, Renisha Howard, and a friend of Howard's known as "Snooka." The group left Howard's house later that evening, dropped off Jeffries, and went to Renisha's house. While there, Yearby learned that her aunt died, and Howard suggested that they rob someone to help get her mind off of losing her aunt. Renisha overheard the conversation and went into the house to retrieve a Kel-Tec 9mm handgun. Yearby declined to participate, but she let Howard borrow her car later that night.

3

When Howard returned between 10:00 and 10:30 p.m., he was sweating and acting strange.

Yearby said that Howard called her the following morning before she went to work. Howard suggested that Yearby visit him to talk because they had not seen each other in a long time, which Yearby found odd given that they had seen each other the night before. Howard called her again later that day and asked why she had not come by. Howard said he needed to talk to her, and Yearby asked why. Howard told her not to tell anyone that he shot someone during an attempted robbery. Yearby did not believe Howard initially, so she went to work where she later saw the news story about the murder.

Two days after the shooting, police officers recovered the Kel-Tec 9mm handgun from Renisha at her residence. Ballistics analysis revealed that the two 9mm shell casings found at the crime scene had been fired from the Kel-Tec 9mm handgun recovered from Renisha.

On appeal, Howard raises only one argument. He argues that

4

the State failed to prove beyond a reasonable doubt that he was the shooter or was even present for the shooting. We disagree.

When we consider the sufficiency of the evidence, our review is limited to an evaluation of whether the trial evidence, when viewed in the light most favorable to the verdicts, is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Mims v. State*, 304 Ga. 851, 853 (1) (a) (823 SE2d 325) (2019). "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." *Mims*, 304 Ga. at 853 (1) (a) (citation and punctuation omitted).

The evidence here was more than sufficient. The evidence shows that the victim was shot and killed during an attempted robbery and that the assailant fled in a white Pontiac. Yearby testified that Howard suggested on the evening of the killing that

they commit a robbery, he borrowed her white Pontiac that night, and he admitted the next day that he shot someone during an attempted robbery. Sellers and Henderson both identified Howard at trial as the man who shot at them during an attempted robbery. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."). Howard cites conflicts in the evidence, notes that there was evidence linking others to the crime, and challenges the identification testimony, pointing out, among other things, that it was late at night and things happened very quickly. But these issues were for the jury, not this Court, to weigh and resolve. See *Mims*, 304 Ga. at 854 (1) (a) ("[I]t was the jury's role to resolve any conflicts or inconsistencies in the evidence."); *Gadson v. State*, 303 Ga. 871, 873 (1) (815 SE2d 828) (2018) ("[T]he determination of a witness's credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury." (citation and punctuation omitted)).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 4, 2019.
Murder. DeKalb Superior Court. Before Judge Flake.
*Brown & Gill, Angela B. Dillon*, for appellant.
*Sherry Boston, District Attorney, Emily K. Richardson, Jason M. Rea, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague,*

7

*Assistant Attorney General*, for appellee.